**Charles Clifton COLLINS, Plaintiff,**

v.

**Betty Anne WALDEN, William Duckworth, George Glaze and County of Clayton, Defendants.**

**Civ. A. No. C84–446A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 12, 1985.

D. Lynn Russell, Decatur, Ga., for plaintiff.

Rodney G. Meadows, Smith, Welch & Meadows, McDonough, Ga., James S. Owens, Jr., Robert L. Goldstucker, Nall & Miller, Harvey S. Gray, Fortson & White, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on a motion by defendant George Glaze to compel discovery and for sanctions; a motion by defendant William Duckworth for summary judgment; a motion by defendant George Glaze for summary judgment; a motion by defendants Betty Walden and Clayton County for summary judgment; and plaintiff's motion to quash the summary judgment motions by defendants Duckworth, Walden and Clayton County. These motions will be considered below after a brief discussion of the relevant facts.

### I. FACTS.

The present action is another product of the divorce proceeding brought by Vicki Lynn Collins against Charles Clifton Collins in the Superior Court of Clayton County, Georgia. After the court, Judge Marvin A. Miller, presiding, awarded custody of the couple's minor child to Mrs. Collins by an order dated September 21, 1981, Mr. Collins, plaintiff in the present action, filed a motion for reconsideration or in the alternative a motion for a new trial. The basis for that motion was that Judge Miller had allegedly been improperly contacted and influenced against plaintiff by one Henry "Nigg" Estes. A hearing was held on that motion before Judge Miller on January 4, 1982, although no ruling was issued at that time. Judge Miller subsequently was diagnosed as having terminal cancer and never returned to the bench. During February and March he underwent treatment, including medications, at various hospitals. During that time most of his cases were apparently assigned to other judges.

Plaintiff and his attorney learned that Judge Miller was seriously ill and had been hospitalized sometime in early February 1982. Defendant George Glaze's Statement of Material Facts Not in Dispute, ¶ 19. However, it was not until after learn-

ing on March 12, 1982 that Judge Miller had decided to deny the motion for reconsideration that plaintiff filed a motion to recuse Judge Miller from the case.[1]  On Monday, March 15, 1982, plaintiff filed a motion to recuse Judge Miller from further consideration of plaintiff's "Motion for Reconsideration or, in Alternative, Motion for New Trial."  As grounds for his recusal motion plaintiff alleged that Judge Miller was biased against plaintiff as a result of the improper *ex parte* communications from Nigg Estes and that Judge Miller was physically and mentally incompetent to continue in the case.

The motion to recuse was assigned to Judge William Ison.  A hearing was set for April 1, 1982.  In preparation for the hearing Mr. Duckworth prepared, and had executed, affidavits from George Glaze, a close personal friend of Judge Miller's, from Dr. Edgar Grady, Judge Miller's treating physician, and from Judge Miller. Each of these affidavits was offered for the purpose of showing that Judge Miller was still mentally alert and able to rule in the case.

Plaintiff's counsel apparently did not learn of the affidavits until the afternoon of March 31, 1982.[2]  Mr. Brantley, who had apparently done little if anything to prepare for the recusal hearing, served subpoenas on Betty Walden, Dr. Grady, and Judge Miller, who at that time was still in the hospital.  Defendant George Glaze was retained in his capacity as county attorney to file a motion to quash the subpoenas

served on Betty Walden and Judge Miller on the grounds that the subpoenas did not comply with the Local Rules of the Superior Court of Clayton County.[3]  Although he was not an employee of Clayton County, Dr. Grady was included in the motion to quash at his request.

The hearing on the motion to recuse Judge Miller was held on April 1, 1982.  At the commencement of the hearing Mr. Brantley conceded to Judge Ison that the motion to quash the subpoenas was meritorious and that he did not oppose the motion.  Judge Ison thereupon granted the motion to quash the subpoenas.  Judge Ison then heard arguments and evidence on the merits of the motion to recuse.  After arguments from both sides concerning the timeliness of those allegations in the motion concerning Judge Miller's alleged bias and the alleged influence of Nigg Estes, Judge Ison granted Mr. Duckworth's motion to dismiss those parts of the recusal motion dealing with bias and improper influence.  Transcript of April 1, 1982 Hearing on Motion to Recuse at p. 30–31 (filed as Exhibit 21 in support of Defendant George Glaze's motion for summary judgment).

The court then turned to the issue of Judge Miller's mental and physical condition.  Mr. Brantley asked the court for additional time to gather evidence as to those issues, but Judge Ison denied his request.  Transcript p. 46.  Mr. Duckworth then read into the record the affidavits of Dr. Grady, George Glaze, and Judge Miller.

1.  Judge Miller's secretary, Betty Walden, had apparently called counsel for Mrs. Collins, William Duckworth, to inform him that the judge had decided to rule and that he desired the parties to prepare proposed findings of facts and conclusions of law.  Duckworth communicated this to Mr. Collins' attorney, Sam Brantley, who then called Betty Walden to confirm the instructions.  At that time Ms. Walden told Brantley that the judge had decided to deny the motion for reconsideration.  *See* Affidavit of Samuel Brantley, filed November 28, 1984 as Exhibit E to Plaintiff's Response to Defendant George Glaze's Motion for Summary Judgment.

2.  Although it is not clear to the court when the affidavits were actually filed or why plaintiff's

counsel did not learn of them until March 31, 1982, plaintiff has not alleged that Mr. Brantley's failure to learn of the affidavits until the afternoon before the hearing was due to any impropriety on the part of Mr. Duckworth.

3.  Local Rule 20 of the Clayton County Superior Court provided that evidence on all motions involving questions of fact, other than motions to appoint receivers, to allow or disallow injunctions or attachments, shall be presented by affidavit or depositions, unless otherwise directed by the Court at least three (3) days in advance of the hearing.  Defendant George Glaze's Statement of Material Facts Not in Dispute, ¶ 49.

Except as to one minor portion of Dr. Grady's affidavit Mr. Brantley made no objection to the substance or truthfulness of any of the affidavits. He only objected to the timeliness of the affidavits and the fact that he had not seen them until the previous evening. He therefore requested additional time to prepare counter-affidavits. Judge Ison denied this objection to the affidavits and stated that he would consider them. He denied Brantley's request for additional time to prepare counter-affidavits.

After closing arguments from the parties Judge Ison declared his ruling from the bench. After first discussing the awkwardness of the procedure by which a judge had to defend himself from a motion to recuse and expressing his preference that the Attorney General represent judges on such matters, Judge Ison made specific rulings as to the allegations in the motion to recuse:

... I find that the allegations as to improper influence from outside sources is filed too late and it was proved that this was known at least on January 4th when the hearing was conducted before Judge Miller and no motion to recuse was filed until March 15, 1982, some two and a half months later approximately. Therefore, that portion comes too late.

In addition thereto, after considering the affidavit of Judge Miller, I find that the affidavit is sufficient to repute (sic) those allegations of improper influence. After reading that portion of the testimony set out in the transcript of January 4th by Mr. Estes, I find as a fact that the affidavit—Judge Miller was not influenced by any outside conversations by Mr. [inaudible] Estes to his secretary or any message relayed thereof.

This Court finds further that that portion of the affidavit consisting of the last two paragraphs filed by the movant in the case contains much hearsay as to the diagnosis of the judge and the treatment and medications that he is receiving and there has been no other evidence submitted. And as a matter of law, those last two paragraphs of the affidavit are insufficient as a matter of law to disqualify Judge Miller.

The Court further finds that if considering the last two paragraphs as sufficient and weighed against the affidavits submitted to Judge Miller, Dr. Grady and George Glaze's affidavit considering with those, but the weight of the evidence is that Judge Miller, though suffering from physical inability to come to his office, is mentally alert and capable of dictating or requiring his secretary to type and impose any order based upon the evidence previously presented in this case.

So, it is the order and judgment of the Court based upon those facts that the order to recuse is hereby denied and the case will be remanded back to the Clerk's Office to be reassigned to Judge Miller. Transcript at p. 72–73.

A written order denying the motion to recuse for the grounds stated by Judge Ison at the hearing was prepared by plaintiff's counsel and entered by the court on April 5, 1982. On April 9, 1982 Judge Miller entered an order denying Defendant's Motion For New Trial, another order denying Defendant's Extraordinary Motion for New Trial,[4] and a final order awarding permanent custody of the couple's minor child to Mrs. Collins and providing certain visitation rights to Mr. Collins.[5] Judge Miller died on April 29, 1982.

On May 5, 1982 Mr. Collins, through his attorney, filed with the Georgia Supreme Court an application for discretionary appeal of the final custody order, the order denying his motion for new trial, and the order denying his extraordinary motion for new trial. The denial of the motion to recuse was not appealed at that time. The

---

4. This motion was filed on March 15, 1982 at the same time as the motion to recuse and was based upon the same general allegations.

5. The order denying the motion for new trial and the final order providing for custody and visitation rights were originally entered on April 5, 1982 but were re-entered by Judge Miller on April 9, 1982.

application for discretionary review was denied by the Supreme Court on May 19, 1982. Exhibit 2 to Defendant Duckworth's Motion for Summary Judgment.

In June 1982 the remaining issues of child support, alimony, and property division were tried before a jury which rendered a verdict which was ultimately reduced to a final judgment of the court entered by Herbert C. Morgan, Senior Judge of the Superior Court of Clayton County. Plaintiff again sought discretionary review from the Supreme Court of Georgia from the final judgment and all preceding orders. However, plaintiff's application for review was again denied on September 2, 1982. Mr. Collins did not seek a writ of certiorari from the United States Supreme Court and has apparently made no attempts in the Georgia courts to have the Clayton County Court's judgment modified or set aside.

Although there apparently have been no further proceedings in the main divorce action, the Supreme Court's denial of plaintiff's application for discretionary appeal has not ended the litigation. On November 10, 1982 Mr. Collins filed an action in this court against his former wife, Vicki Lynn Collins, the Supreme Court of the State of Georgia, and, in their official capacities, all of the Justices of the Supreme Court. The substance of this action, which was styled *Collins vs. Collins*, Civil Action No. C82–2460A (hereinafter referred to as "*Collins I*"), was that plaintiff's property rights had been adjudicated by a judge who was incompetent and without authority under Georgia law and that he had therefore been deprived of his property without due process. The complaint in *Collins I* sought to have this court vacate the state court's final judgment and enjoin its enforcement. On June 29, 1984 the court dismissed *Collins I* for lack of jurisdiction. *See Collins v. Collins*, 597 F.Supp. 33 (N.D.Ga.1984).

On March 7, 1984 plaintiff filed the present action naming as defendants Betty Anne Walden (Judge Miller's secretary), William Duckworth (Mrs. Collins' attorney in the divorce action and in *Collins I*),

George Glaze (a close friend of Judge Miller's and the Clayton County attorney), and Clayton County. The complaint, brought pursuant to 42 U.S.C. § 1983, alleges that the individual defendants conspired to deprive plaintiff of his civil rights by denying him a full and fair hearing on the motion to recuse. The complaint further alleges that the defendants

collaborated with each other to procure a decision adverse to the Plaintiff by taking advantage of the weakened physical and mental state and/or incapacity of Judge Miller in exercising undue influence over Judge Miller thereby undermining the judge's independence to make a deliberate, wilful and conscious decision in the case of *Collins vs. Collins*. Defendants knew or should have known that said actions would serve to deprive Plaintiff Charles Collins of constitutionally protected rights and did in fact deprive Plaintiff of said constitutionally (sic) rights causing him the loss of custody of his daughter and severe mental pain and anxiety. Complaint at pp. 8–9.

Unlike in *Collins I*, plaintiff in the present action does not seek to reverse, vacate, modify, or enjoin the enforcement of the state court judgment. Instead, plaintiff seeks more than $200,000 in damages plus attorney's fees and costs.

**II. DEFENDANT GEORGE GLAZE'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS; PLAINTIFF'S MOTION TO QUASH THE SUMMARY JUDGMENT MOTIONS FILED BY DEFENDANTS DUCKWORTH, WALDEN, AND CLAYTON COUNTY.**

Plaintiff's motion to quash the summary judgment motions by defendants Duckworth, Walden, and Clayton County is based upon the failure of those defendants to submit proper statements of material facts not in dispute as required by the local rules of this court and this court's pretrial instructions. Subsequent to the filing of plaintiff's motion the defendants submitted such statements. Plaintiff's motion is therefore moot and is DENIED on that basis.

Defendant George Glaze's motion to compel discovery and for sanctions is made moot by the court's ruling below on the summary judgment motions and is DENIED on that basis.

### III. THE SUMMARY JUDGMENT MOTIONS.

Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983. This section provides a federal cause of action for damages against any person who, acting under color of law, deprives another person of any federally protected right.[6] In order to state a claim for relief under section 1983 the plaintiff must show that he has been subjected to a deprivation of a right, privilege, or immunity protected by federal law by a person acting under color of state law. The first question then is whether plaintiff has been deprived of a federally protected right.

Plaintiff's complaint states that he was deprived of his fourteenth amendment right to due process. The due process clause of the fourteenth amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." Unfortunately, plaintiff has been somewhat vague in explaining to the court how the actions of the defendants in this case resulted in *the state* depriving him of his life, liberty or property without due process. Construing the complaint liberally, the court understands plaintiff to allege three possible ways in which his rights under the due process clause were violated. First, plaintiff alleges that defendants, by conspiring to procure false affidavits and to quash plaintiffs' subpoenas, caused plaintiff to be deprived of a full and fair hearing on the motion to recuse Judge Miller. Plaintiff was not deprived of life, liberty, or property as a result of this

hearing. He was only deprived of the asserted right to have a different judge rule on his motion for reconsideration and motion for new trial. The only deprivation, if any, was of the right to procedural due process.

Plaintiff also claims, somewhat vaguely, that defendants caused him to be deprived of his child without due process. Plaintiff contends that defendants collectively took advantage of Judge Miller's debilitated condition to procure rulings in favor of Mrs. Collins. Plaintiff does not allege that Judge Miller was corrupt or that he was part of the conspiracy. Rather, plaintiff appears to allege that Judge Miller became the unwitting tool of the defendants and that defendants were thereby able to obtain the order awarding custody of the couple's child to Mrs. Collins. It is not clear to the court whether plaintiff contends such actions by defendants denied plaintiff procedural or substantive due process. Arguably, the contention contains elements of both, and the court treats the complaint as asserting both.

Before analyzing the above claims it is worthwhile to pause and consider what plaintiff does *not* contend. First, plaintiff does not contend that the defendants in this action in any way conspired to deprive him of due process prior to March 8, 1982. Thus, plaintiff does not allege that any of these defendants acted to deprive him of a fair trial of the divorce or improperly influenced the original order awarding custody of the child to Mrs. Collins. Nor does plaintiff allege that Judge Ison, who denied plaintiff's motion to recuse, had any part in the conspiracy.[7] Finally, plaintiff does not allege that the conspiracy continued after the last orders were entered by Judge Miller on April 9, 1982. Thus, plaintiff does

---

**6.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**7.** This fact alone is sufficient to distinguish this case from *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), and *Dykes v. Hosemann,* 743 F.2d 1488 (11th Cir.1984), *reh'g en banc granted,* 743 F.2d at 1505.

not allege that defendants played any impermissible part in plaintiff's unsuccessful appeal of the rulings in the case. It is clear, therefore, that the conspiracy plaintiff alleges is confined only to the period of time immediately before and after the recusal hearing.

### A. The Hearing on the Motion to Recuse.

As noted above, plaintiff contends that defendants acted to deprive him of a full and fair hearing on his motion to recuse Judge Miller by conspiring to submit to Judge Ison false and misleading affidavits and by seeking to quash his subpoenas.

■ Assuming the truth of plaintiff's allegations, the court finds that plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. First, it is apparent to the court that plaintiff was accorded procedural due process. Plaintiff had notice of the hearing and an opportunity for his counsel to argue the merits of the motion before a neutral judge. Plaintiff's counsel was allowed to testify concerning his knowledge of Judge Miller's condition and was given the opportunity to present any evidence he had in support of his contention that Judge Miller was no longer competent to continue in the case. Any inability to put more evidence before Judge Ison was not occasioned by any impropriety of the defendants.[8] Since plaintiff was not deprived of procedural due process at the recusal hearing he has failed to state a claim for relief under 42 U.S.C. § 1983.

■ Even assuming that the affidavits were materially false and misleading, this court cannot find that the reliance upon them by a neutral judge in an adversarial setting deprived plaintiff of due process. Procedural due process does not guarantee that perjured evidence will not be used in a civil trial. It only guarantees notice and a

meaningful opportunity to be heard by a neutral decision-maker. Plaintiff had notice and a meaningful opportunity to present his arguments to a neutral decision-maker. As a matter of law the recusal hearing accorded plaintiff the essentials of due process even if some of the evidence introduced may have been false.

■ In addition, the court observes that there are adequate state remedies to redress the alleged deprivation of a fair hearing on the motion to recuse. First and foremost is the existence of an opportunity for appellate review of the proceedings. A denial of a motion to recuse or disqualify a judge can be raised as an enumeration of error in the appeal of the final judgment. *See, e.g., Savage v. Savage,* 234 Ga. 853, 218 S.E.2d 568 (1975); *Howard v. Warren,* 206 Ga. 838, 59 S.E.2d 503 (1950). The Georgia courts have held that a party asserting grounds for disqualification of a judge is entitled to the opportunity to present evidence to support his contention, *Savage v. Savage, supra,* 234 Ga. at 856, 218 S.E.2d 568. If it appears on appeal that the judge should have been disqualified, then all of his rulings in the case are "nugatory." *Howard v. Warren,* 206 Ga. at 840, 59 S.E.2d 503.

■ The Supreme Court has held that there has been no deprivation of procedural due process by state action where the state has provided an adequate post-deprivation remedy. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980); *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The state remedy need not be identical to, or as extensive as, a remedy for damages under section 1983, but instead need only be sufficient to satisfy the requirements of procedural due process. *Parratt,* 451 U.S. at

---

**8.** One of the reasons plaintiff produced no witnesses was that defendants moved to quash his subpoenas. However, plaintiff's counsel did not oppose the motion to quash, and the motion was granted by a neutral judge. The court finds any contention by plaintiff that defendants deprived plaintiff of any rights by filing a motion which was unopposed and meritorious to be

completely frivolous. Judge Ison also denied plaintiff's request for additional time to produce further evidence, but this was a ruling made by a neutral judge after argument by opposing counsel in an adversarial setting. It is not the function of this court to review the correctness of that ruling. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

**1314**

544, 101 S.Ct. at 1917. In the present case the court holds that the existence of state avenues of judicial appeal is sufficient to cure any alleged infirmities in the hearing on the motion to recuse. *See Lee v. Hutson,* 600 F.Supp. 957 (N.D.Ga.1984). Even assuming that the affidavits were false and that plaintiff did not have a full opportunity to present evidence as to Judge Miller's condition, these alleged defects were reviewable and correctable on appeal. As plaintiff has not been deprived of procedural due process by state action, he has not been deprived of a federally protected right and therefore has no remedy for damages under section 1983.

■ Finally, the court notes that even if plaintiff was deprived of procedural due process in the recusal hearing, each of the individual defendants is immune to an action for damages under section 1983. The Supreme Court has held that the broad common law immunity which protects participants in the judicial process from subsequent actions for damages is applicable to section 1983 actions. *See, e.g., Briscoe v. Lahue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This absolute immunity extends to judges, *Pierson v. Ray, supra,* prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), court clerks, *Scott v. Dixon,* 720 F.2d 1542 (11th Cir.1983), jurors, *Sunn v. Dean,* 597 F.Supp. 79 (N.D. Ga.1984), and witnesses, *Briscoe v. Lahue, supra.* The purpose of the immunity is to insure that the judicial process function unimpeded by fear on the part of its participants that they will be sued for damages for their part in the proceeding. As the Supreme Court has stated with regard to witnesses:

> ... in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Calkins vs. Sumner,* 13 Wis. 193, 197 (1860). A witness's apprehension of damages lia-

bility might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify.... And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.... Even within the constraints of the witness's oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective evidence. ... But the truth-finding process is better served if the witness's testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."

*Briscoe v. Lahue,* 103 S.Ct. at 1114–15 (some citations omitted).

■ Although the court in *Briscoe* dealt with the immunity of a witness for testimony given in open court, the court's reasoning is equally applicable to other forms of testimony such as depositions and affidavits. The threat of a suit for damages can have the same chilling effect on a witness who testified by affidavit or deposition as one one who testifies in court. Yet, testimony by affidavit or deposition is an important part of the judicial process, especially before and after the actual trial, and should enjoy the same protection as in-court testimony. Without such testimony the judicial process could simply not function efficiently. This court holds therefore that a witness who testifies by sworn affidavit is entitled to the same absolute immunity to an action for damages as a witness who testifies in court. The immunity applies even though the testimony might have been knowingly false and malicious. *See Briscoe v. Lahue,* 103 S.Ct. at 1113–14. Defendant George Glaze is, therefore, ab-

solutely immune from any civil liability in damages for his testimony by affidavit.[9]

■ In addition, it appears to the court that the policies which support immunity for witnesses also support immunity for other participants in the judicial process. The truth-seeking function of the court demands evidence. Yet evidence does not present itself to the court. It must be located, organized, and understood by the attorneys before it can be presented to the court. This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill. The search for evidence often requires interviews with persons who may not actually testify at trial but who are nonetheless important to the process because they might know of someone else whose testimony would be more helpful. The possibility that they may be forced to defend a lawsuit for damages can only discourage such people from becoming involved. The court's need for evidence demands that *all* participants in the process of gathering evidence for use at trial be immune from any liability for damages for their part, however small, in that process.[10]

The fact that plaintiff alleges a conspiracy to deprive him of his rights by the use of false affidavits does not alter the court's conclusion. Once plaintiff filed his motion to recuse, Mr. Duckworth, as counsel for Mrs. Collins, was within his rights to interview people who might have some knowledge of Judge Miller's condition. Betty Walden, as the judge's secretary, would certainly be a logical person to contact, as would be the treating physician. Mr. Glaze, as an attorney and long-time friend

of Judge Miller's, would also have been a logical person to contact for an opinion as to Judge Miller's continued legal abilities. Mr. Duckworth was free to talk with these potential witnesses, and they were free to talk to him, without fear of potential liability for damages under section 1983.

■ The immunity also extends to collaboration between Mr. Duckworth and the witnesses in the preparation of affidavits. By their very nature affidavits often represent a collaboration between the attorney and the witness. The attorney often interviews the witness and then prepares the affidavit himself based on what the witness has told him. The witness then reads the affidavit to be certain that it represents his testimony and signs it under penalty of perjury. The witness's immunity, which applies even if the testimony is false, would be meaningless if the witness could be held liable under a conspiracy theory based on the collaboration with counsel. Similarly, the attorney's immunity for his role in the process of gathering evidence would be meaningless if he could be held liable under a conspiracy theory. The court holds, therefore, that each of the individual defendants is immune to any claim for damages under section 1983 based upon any theory that defendants conspired to deprive plaintiff of a fair hearing by collaborating in the preparation of false affidavits.

Because plaintiff has not shown that he was denied due process in the recusal hearing, he has failed to state a claim for relief under section 1983. In the alternative, the court concludes that even if plaintiff was deprived of due process he may not recover damages from any of the individual defendants because each of the defendants is immune from civil liability for his or her part

---

9. Of course, if a witness's testimony is knowingly false and malicious, the witness can be found guilty of perjury and face criminal penalties. In addition, defendant Glaze, as an attorney, is subject to State Bar disciplinary proceedings. Thus, a witness is not free to falsify his testimony without penalty. He is free, however, to testify without fear of a civil action for damages.

10. The immunity does not necessarily protect investigators from civil liability for torts committed during the investigation. That is a matter of state law. The immunity discussed by the court in this opinion is limited to subsequent actions for damages based upon any theory that the defendants have, by the use of false testimony, deprived plaintiff of federally protected rights.

in the presentation of affidavits to the court.

B. The Rulings by Judge Miller.

Plaintiff also alleges that defendants conspired to deprive him of his right to due process by taking advantage of Judge Miller's debilitated condition to procure rulings favoring Mrs. Collins.[11] Plaintiff does not allege that Judge Miller was an active part of the conspiracy.[12] Rather, plaintiff alleges that Judge Miller, because of his condition, became increasingly unable to exercise his full analytical abilities in the case and that he ultimately became simply a tool of defendants.[13]

The court finds several problems with plaintiff's theory. The first problem is that Judge Ison has previously ruled that Judge Miller was capable of continuing to perform his judicial functions in the case and that he was not biased against plaintiff. Plaintiff's theory would require the court to decide, contrary to Judge Ison's prior ruling, that Judge Miller was *not* capable of performing his judicial functions. The voluminous exhibits plaintiff has filed thus far in this case make it clear that plaintiff seeks in this court a new trial on the issue of Judge Miller's competence, an issue which has previously been resolved against him.

■ It is well-established that this court is bound to give the same preclusive effect to a judgment by a Georgia court that the judgment would be given in the Georgia courts. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); 28

USC § 1738. This is true even though the subsequent action is brought under 42 USC § 1983. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ The next question is whether the Georgia courts would give preclusive effect to Judge Ison's ruling that Judge Miller was competent. In *Lowe Engineers v. Royal Indemnity Co.*, 164 Ga.App. 255, 297 S.E.2d 41 (1982) the Georgia Court of Appeals applied what it called the "Doctrine of Binding Precedent" to hold that Royal Indemnity could assert against Lowe Engineers a prior judgment from another state and thereby bar Lowe from re-litigating an issue central to the prior judgment, even though Royal Indemnity had not been a party to the prior litigation. The court decided that the fact that Royal Indemnity had not been a party or privy to the prior litigation made inapplicable the doctrines of *res judicata* or collateral estoppel. However, because the issue involved had been fully litigated in the prior case and was central to the outcome, the court concluded that the prior disposition of the issue should be given preclusive effect notwithstanding that the parties were not identical. 164 Ga.App. at 258–59, 297 S.E.2d 41. The essence of the doctrine of binding precedent, as applied by the Georgia courts, appears to be that a party deserves only one "bite at the apple." Where a party has already once litigated an issue and has lost, he may not thereafter re-litigate the same issue against another party in another court. *See Bray v. Westinghouse Electric*

---

**11.** The court understands the focus of plaintiff's attack to be the rulings issued in April 1982. Plaintiff does not contend that any of these defendants improperly influenced Judge Miller's original decision to award custody of the child to Mrs. Collins. Although Mr. Collins moved for reconsideration of the original order based upon the alleged improper influence of "Nigg" Estes, plaintiff has not alleged that these defendants were in any way responsible for Mr. Estes calling Judge Miller's office.

**12.** As with Judge Ison, the absence of any allegation that Judge Miller was a part of the conspiracy distinguishes this case from *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed. 185

(1980) and *Dykes v. Hosemann*, 743 F.2d 1488 (11th Cir.1984), *reh'g en banc granted*, 743 F.2d at 1505. This fact also makes it difficult for the court to see how defendants could have been acting under color of state law.

**13.** The court believes that plaintiff's theory that Judge Miller was so incompetent that he was effectively controlled by defendants is by its very nature inconsistent with any theory that Judge Miller was an active participant in the conspiracy. If Judge Miller was mentally alert enough to conspire, then he was mentally alert enough to rule in the case.

*Corp.*, 103 Ga.App. 783, 120 S.E.2d 628 (1961).

The issues of whether Judge Miller was competent to continue in the divorce case and whether he was biased have previously been resolved against plaintiff by a court of competent jurisdiction. Judge Ison explicitly found that Judge Miller was able to carry out his duties and that the attack on his fairness was untimely and without merit. Both rulings were critical to the denial of the motion to recuse and both were challenged on appeal to the Georgia Supreme Court. This court has little trouble in concluding that the Georgia courts would give preclusive effect to Judge Ison's disposition of those issues and that they would bar plaintiff from re-litigating those issues in a subsequent action for damages. This court is bound by 28 U.S.C. § 1738 to give Judge Ison's ruling the same preclusive effect. The court holds, therefore, that plaintiff is barred from re-litigating in this court the issues of whether or not Judge Miller was biased or was not competent to handle his judicial responsibilities. The facts of Judge Miller's competence or impartiality are established for this case.

Having concluded that Judge Ison's ruling that Judge Miller was competent and unbiased is binding on this court, the court concludes that plaintiff's argument that defendants took advantage of his condition must fall. A finding that a judge is impartial and competent to perform his judicial function necessarily compels a conclusion that he was not so debilitated that he could become a tool of one side.

Even assuming plaintiff could be allowed to prove in this proceeding that Judge Miller was not competent, the court would conclude that defendants' motion for summary judgment must be granted. Defendants Glaze and Duckworth have filed sworn affidavits categorically denying any participation in any conspiracy or other collaborative effort to deprive plaintiff of a fair trial, and Glaze has particularly denied participation in any effort to procure a decision adverse to plaintiff by taking ad-vantage of Judge Miller's condition. When a motion for summary judgment is made and supported by affidavit the party opposing the motion may not rest upon the mere allegations of the pleadings but must set forth specific facts showing that there are issues for trial. Fed.R.Civ.P. 56(e). Where a plaintiff has alleged a conspiracy and the existence of the conspiracy has been denied in sworn affidavits, the burden is on the plaintiff to come forward with some "significant probative evidence" to support the existence of the conspiracy. *Cf. Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 554 (5th Cir.1980). Plaintiff in this case has failed to come forward with a shred of evidence to support his contention that the defendants took advantage of Judge Miller's condition. Plaintiff relies entirely on the inference he draws from his version of the events prior to the recusal hearing. In a nutshell, plaintiff appears to assume that the only reason Duckworth opposed the motion to recuse (by means of allegedly perjured affidavits) was so that he could continue to have a judge whose will he could subvert. The only reason to want a dying, incompetent judge, plaintiff seems to infer, is to overwhelm his will and procure a favorable ruling. Since the ruling was favorable to Mr. Duckworth's client, plaintiff would infer that Mr. Duckworth did in fact exert undue influence to obtain it. The collaboration of the other defendants in this unholy scheme is seemingly inferred from their involvement in the motion to recuse.

Even assuming defendants collaborated to conceal from Judge Ison the seriousness of Judge Miller's condition, the court fails to see how this is evidence that defendants took advantage of Judge Miller's condition to procure the April 1982 rulings adverse to plaintiff. Plaintiff's allegation that the rulings were not the result of Judge Miller's independent analysis of the facts and equities in the case is pure speculation and is unsupported by any evidence. The absence of any evidence on this critical point leads the court to conclude that plaintiff cannot show that Judge Miller's rulings deprived him of due process.

■■■■ There is one final reason why defendants' motions for summary judgment must be granted. That is the existence of an adequate state remedy. Even assuming that plaintiff could prove that Judge Miller was incompetent and that the defendants conspired to conceal his condition from Judge Ison and conspired to take advantage of his weakened condition to procure rulings adverse to plaintiff, and even assuming plaintiff could overcome the serious problem of establishing a causal connection between defendants' actions and the injury he alleges,[14] plaintiff cannot establish a violation of procedural due process if the state has provided an adequate remedy for the alleged deprivation. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980). The fourteenth amendment's due process clause protects only against deprivations of life, liberty, or property *by the state. Parratt v. Taylor, supra,* teaches that when the state has provided an adequate remedy to redress the alleged deprivation there has been no deprivation by the state. Since the state has provided an adequate post-deprivation remedy, there has been no deprivation by the state and there is no violation of the fourteenth amendment's due process clause and no action for damages lies under 42 U.S.C. § 1983.

In the present case plaintiff alleges, in essence, that the judgment against him was obtained by means of the fraudulent acts of defendants. Plaintiff seeks damages for the injury he has allegedly suffered as a result of that judgment. However, the state has provided a remedy to persons who have had judgments obtained against them by fraud. Under Georgia law a judgment obtained by fraud may be attacked by means of a "complaint in equity in any superior court of appropriate jurisdiction." *See* O.C.G.A. § 9–11–60. "A [c]omplaint in equity may be brought to set aside a judgment for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant. Where a judgment is subject to be set aside in equity, the court may grant such other and further relief, legal or equitable, as may be necessary to afford complete relief." O.C.G.A. § 9–11–60(e). Thus, assuming the truth of plaintiff's allegation that the final order awarding custody to his wife was obtained by fraud, it appears that there is an adequate judicial remedy under Georgia law to redress this deprivation.[15]

■■■■ Plaintiff vigorously argues that there are no adequate state remedies to redress him for the alleged deprivation of his rights because there is no state tort

**14.** In order to recover for a violation of substantive due process plaintiff must establish, first, that he was deprived of liberty or property in the constitutional sense, and second, that the procedure used to deprive him of that interest was constitutionally deficient. *Drummond v. Fulton County Department of Family & Children's Services*, 563 F.2d 1200, 1206 (5th Cir. 1977) (en banc). The "relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection," *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), and it is clear that the state cannot terminate such a relationship without providing procedural due process. *Id.* However, in order to state a claim that the award of custody to the former spouse violates plaintiff's substantive due process rights, plaintiff must establish not only that the procedure was deficient but also that he would otherwise have been entitled to custody of the child. He must show that but for defendants' actions he would have received custody, otherwise he cannot show he was deprived of a constitutionally protected liberty interest.

The reason for requiring plaintiff to establish "but for" causation in this context is simple. A collateral attack on the outcome of a judicial proceeding is also contrary to the principle of finality that it should not be allowed unless there is proof that the outcome would have been different but for the defendants' conduct. In a sense it is like requiring a plaintiff in a legal malpractice action to demonstrate that but for the attorney's negligence he would have prevailed. *See, e.g., McDow v. Dixon*, 138 Ga.App. 338, 226 S.E.2d 145 (1976). To allow a lesser standard of causation would encourage subsequent damage actions by disgruntled losers, especially in cases as emotionally charged as divorce cases.

**15.** In addition, the rulings which plaintiff contends were obtained by fraud were appealable to the Georgia Supreme Court under Georgia's discretionary appeal statute. Plaintiff in fact appealed the final custody order to the Georgia Supreme Court under that statute, but the court declined to hear his appeal. This court indicates no conclusion on whether or not Georgia's

remedy by which he could recover damages from these defendants for their alleged conspiracy to violate his rights. However, as the court stated in *Parratt v. Taylor*,

> Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under section 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

451 U.S. at 544, 101 S.Ct. at 1917. This court holds that the existence of a state judicial procedure to set aside judgments obtained by fraud and to "grant such other and further relief, legal or equitable, as may be necessary to afford complete relief" is sufficient to redress plaintiff for the deprivation he has alleged and is sufficient to satisfy the fourteenth amendment's due process clause. Again, because the state has provided an adequate remedy to redress the alleged deprivation, there has been no violation of plaintiff's constitutional right to procedural due process. In addition, because plaintiff was not deprived of procedural due process he cannot state a claim for any denial of substantive due process. *See Drummond v. Fulton County Department of Family & Children's Services*, 563 F.2d 1200, 1206 (5th Cir.1977) (en banc).

Because the undisputed facts show that the state has not deprived plaintiff of his constitutional right to due process, plaintiff cannot recover damages for such a deprivation from any of the defendants pursuant to 42 U.S.C. § 1983. For this reason, and for all the reasons discussed above, the summary judgment motion filed by each of the individual defendants is GRANTED. The motion for summary judgment by defendant Clayton County is GRANTED for the additional reason that plaintiff has not even attempted to show that the depriva-

tion was due to an official policy or custom of Clayton County. *See McLaughlin v. City of LaGrange*, 662 F.2d 1385 (11th Cir.1981), *reh'g denied*, 668 F.2d 536 (5th Cir.), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). The county cannot be held liable under 42 U.S.C. § 1983 absent such a policy or custom "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1977).

## IV. CONCLUSION.

In sum, plaintiff's motion to quash the summary judgment motions by defendants Duckworth, Walden, and Clayton County is DENIED as moot. Defendant George Glaze's motion to compel discovery and for sanctions is also DENIED as moot. The motions for summary judgment filed by defendants Glaze, Duckworth, Walden, and Clayton County are all GRANTED. This action is hereby DISMISSED. Defendants may move within ten (10) days for an award of attorney's fees pursuant to 42 U.S.C. § 1988.

---

discretionary appeal statute alone would be adequate to satisfy due process under *Parratt v. Taylor*. The court notes only that plaintiff in

the present case has not argued that the state appellate procedure is not adequate to satisfy due process.