Roger N. KAHN, M.D., and Sandra S. Kahn, Plaintiffs,

v.

Sheldon O. BURMAN, M.D., Defendant.

No. 87–CV–10070–BC.

United States District Court, E.D. Michigan, N.D.

Oct. 23, 1987.

J. Michael Fordney, Victor J. Mastromarco, Fordney, Cady, Rusch & Prine, P.C., Saginaw, Mich., for plaintiffs.

Jack Neal, Stephanie A. Nelson, Neal & Lengauer, P.C., Flint, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This case, which involves two physicians as opposing litigants, arises directly out of a medical malpractice action that is pending in Saginaw County Circuit Court. Before filing the state malpractice claim in which plaintiff Michael Johnson named Dr. Roger Kahn as a defendant, Johnson's attorney, Loren Gray, contacted Dr. Sheldon Burman to obtain an evaluation of the presence or absence of malpractice on the part of Dr. Kahn and other potential defendants. In response to Attorney Gray's request, Dr. Burman prepared a report on August 31, 1984 and presented the report solely to Attorney Gray. Dr. Burman's preliminary report noted several errors that were made by the treating physicians, including Dr. Kahn; the scope of this report was strictly limited to medical analysis of the treatment that the patient received. Further, Dr. Burman carefully drafted his report to indicate that his analysis merely provided his opinions concerning the adequacy of medical treatment and the viability of a medical malpractice action based on the treatment.

After reviewing Dr. Burman's preliminary report, Attorney Gray filed a malpractice action on October 10, 1985 in state court on behalf of his client. The complaint in the state malpractice action named Dr. Kahn, several other physicians, and two hospitals as defendants. On October 3, 1985, Attorney Gray identified Dr. Burman as an expert witness in the medical malpractice action. Subsequently, the deposition of Dr. Burman was taken on March 15, 1986 at Dr. Burman's offices in Highland Park, Illinois. Dr. Burman opined in the course of his deposition that Dr. Kahn had been negligent and had breached the appropriate standard of care in the course of treating the malpractice plaintiff. Dr. Burman's deposition testimony, which dealt only with the adequacy of medical treatment provided to the malpractice plaintiff, indicated that Dr. Kahn had been negligent in failing to properly review medical records such as angiograms and in performing a cardiac catheterization. After his deposition was taken, Dr. Burman pre-

pared a second report concerning the malpractice claim and furnished Attorney Gray with this report. As with the first report, Dr. Burman's second report addressed only the sufficiency of the medical treatment that the various defendants provided.

While the state court malpractice action was in progress, Dr. Kahn and his wife filed this suit against Dr. Burman. Dr. Kahn has asserted five claims against Dr. Burman (negligence, fraudulent and innocent misrepresentation, defamation, and intentional infliction of emotional distress) which are based exclusively upon Dr. Burman's reports and deposition testimony provided in conjunction with the state malpractice litigation. Additionally, Dr. Kahn's wife has raised a loss of consortium claim against Dr. Burman that is premised on the same underlying facts. Dr. Burman moved for dismissal of the negligence, defamation, and intentional infliction of emotional distress claims, and for summary judgment on the two misrepresentation claims; the Court took all of defendant's motions under advisement. Having considered the motions individually, the Court must grant each motion and dismiss this action in its entirety.

The case presents questions of first impression which require the Court to consider and define the parameters of an expert's potential liability for statements made prior to, and in the course of, litigation. As a threshold matter, the broad immunity extended to witnesses may entirely shield Dr. Burman from civil liability. If Dr. Burman is not completely immunized, though, the unique relationship of medical experts to the litigation process necessitates an individualized evaluation of each substantive claim. As all parties to this diversity action recognize, Michigan law governs the resolution of all legal issues before the Court.

**Witness Immunity**

■ With respect to Dr. Burman's deposition testimony in the state malpractice litigation, witness immunity clearly supplies Dr. Burman with absolute protection against civil liability. *See Briscoe v. LaHue,* 460 U.S. 325, 331–32, 103 S.Ct. 1108, 1113–14, 75 L.Ed.2d 96 (1983) (witness has "absolute" immunity for all statements that are "relevant to the judicial proceeding"); *Collins v. Walden,* 613 F.Supp. 1306, 1314 (N.D.Ga.1985), *aff'd without opinion,* 784 F.2d 402 (11th Cir.1986) (holding that witness immunity protects statements made in affidavits, court noted "[a]lthough the court in *Briscoe* dealt only with the immunity of a witness for testimony given in open court, the court's reasoning is equally applicable to other forms of testimony such as depositions and affidavits."); *see also Strength v. Hubert,* 660 F.Supp. 878, 887 (M.D.Ala.1987). However, Dr. Kahn's claims premised on the reports that Dr. Burman prepared for Attorney Gray require the Court to define the breadth of witness immunity. Logical concerns, both legal and policy-based, strongly suggest that witness immunity encompasses experts' reports prepared either before or during litigation.

Although Dr. Burman's reports are not statements that were made under oath in the course of litigation, they may well satisfy the witness immunity prerequisite of "relevancy to the judicial proceedings." *See Briscoe,* 460 U.S. at 331, 103 S.Ct. at 1113; *Hoover v. VanStone,* 540 F.Supp. 1118, 1121 (D.Del.1982) ("Strict legal relevance need not be demonstrated; instead the allegedly defamatory statements must have only some connection to the subject matter of the pending action."). Physicians' reports are so inextricably intertwined with medical malpractice actions that it would be illogical to hold that such reports are not "relevant" to the underlying judicial proceedings. *See Adams v. Peck,* 43 Md.App. 168, 184, 403 A.2d 840, 849 (1979), *aff'd,* 288 Md. 1, 415 A.2d 292 (1980) ("unsworn pre-trial communications between potential witness [psychiatrist] and counsel" fall within the ambit of witness immunity). To hold otherwise would defeat the purpose of witness immunity, which is to ensure that the judicial process functions "unimpeded by fear on the part of its participants that they will be sued for damages for their part in the proceedings." *Collins,* 613 F.Supp. at 1314.

As a matter of policy, also, witness immunity should extend to reports prepared by both potential and retained expert witnesses. Justice Stevens reasoned in *Briscoe* that damage suits against witnesses must "yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Briscoe*, 460 U.S. at 332–33, 103 S.Ct. at 1114. This policy of providing for reasonably unobstructed access to the relevant facts and issues mandates the extension of immunity to Dr. Burman for all statements that he made in his reports to Attorney Gray. The overriding concern for disclosure of pertinent and instructive expert opinions before and during medical malpractice actions is no less significant than the clearly-recognized need for all relevant factual evidence during the course of litigation.

In *Briscoe*, Justice Stevens noted the pernicious implications of imposing liability upon witnesses:

> A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, a witness might be reluctant to come forward to testify. And once the witness is on the stand, his testimony might be distorted by the fear of subsequent liability.

*Id.* at 333, 103 S.Ct. at 1114 (citations omitted). Justice Stevens' first concern is particularly applicable to Dr. Burman's two reports. Physicians who wish to limit groundless malpractice suits obviously should support review of potential malpractice claims by fellow members of the medical profession. If doctors who provide expert reports are subjected to civil liability for the contents of their reports, fewer doctors will be willing to evaluate potential malpractice claims in advance of litigation. Rather, medical experts will only provide sworn expert testimony in medical malpractice cases that are in progress because witness immunity will protect those, and only those, statements. *See generally*

*Adams,* 43 Md.App. at 182–83, 403 A.2d at 848 (quoting *Middlesex Concrete Prods. and Excavating Corp. v. The Carteret Ind. Ass'n,* 68 N.J.Super. 85, 91–92, 172 A.2d 22, 25 (1961)). In the absence of expert review, then, meritless medical malpractice suits will be eradicated less frequently prior to filing. This result is neither desirable nor efficient. Thus, the immunity extended to Dr. Burman for statements and opinions that he offered in his deposition testimony must apply equally to the statements of opinion contained in his two advisory reports;[1] all claims against Dr. Burman in this case must be dismissed on this basis.

Even if Dr. Burman's reports were not within the sphere of witness immunity protection, dismissal or summary judgment still would be appropriate under Michigan law on each of the six counts in plaintiffs' complaint. The deficiencies in plaintiffs' theories can be best evidenced by individualized analysis of the various claims.

### Count I—Negligence

■ The most viable legal basis that Dr. Kahn has raised to support his claim against Dr. Burman is a negligence theory. In Michigan, as in virtually all other jurisdictions, civil liability for negligence requires proof of four elements: (1) the existence of a duty; (2) a breach of that duty; (3) an injury; and (4) a causal relationship between the breach and the injury. *Roulo v. Automobile Club of Michigan,* 386 Mich. 324, 328, 192 N.W.2d 237 (1971); *Martinez v. Redford Community Hosp.,* 148 Mich.App. 221, 229, 384 N.W.2d 134 (1986). The major point of contention on defendant's motion to dismiss the negligence claim is whether Dr. Burman, as a consultant and potential expert witness of an adverse party, owed any legal duty to Dr. Roger Kahn. Although no Michigan decision has addressed this specific concept of a potential adverse witness' duty, it is the opinion of the Court that no such duty exists.

1. The Court's determination of immunity with respect to the presuit report is limited to the writing and publishing of the report. Query whether immunity would be appropriate if the potential state court malpractice plaintiff were suing his own expert witness for negligence in formulation of the opinion that is expressed in the report.

Under Michigan law, the question of duty is one of law for the Court to decide. *Moning v. Alfono*, 400 Mich. 425, 436–37, 254 N.W.2d 759 (1977). Because the Court lacks the benefit of a Michigan state court decision on the issue of a potential adverse witness' duty to an opposing litigant, the Court must anticipate the position that Michigan courts will take on this proposed extension of duty. *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985). In predicting how Michigan courts will resolve this question of duty, the Court may consider analogous Michigan Supreme Court cases as well as decisions from other jurisdictions. *Id.*

In the readily-analogous case of *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981), the Michigan Supreme Court faced the issue of whether an attorney who files a malpractice suit against a doctor owes any legal duty to the doctor. The *Friedman* court refused to extend a duty from the attorney to his client's adversary, ruling instead that such extension of the duty concept would be "inconsistent with basic precepts of the adversary system." *Id.* at 23, 312 N.W.2d 585; *see also Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir.1979) ("The lawyer's duty of care is to his client and to the court."). Thus, the Michigan Supreme Court has intentionally constricted the concept of duty in the context of adversarial legal proceedings.

In addition, courts that have faced the question of a witness' duty to an opposing litigant have concluded that the legal concept of duty does not extend to such bounds. Writing for the Arizona Court of Appeals, Judge Sandra Day O'Connor found that the only duty which a witness owes is to the court, rather than to an adverse party. *Lewis v. Swenson*, 126 Ariz. 561, 566, 617 P.2d 69, 74 (Ariz.App. 1980). Filling out this logic, Judge O'Connor reasoned that the witness' breach of the duty owed to the court cannot give rise to a cause of action in tort by the adverse party. *Id.*

Judge O'Connor's holding comports with the conclusion of Judge Brieant as expressed in *Dale v. Bartels*, 552 F.Supp. 1253, 1271 (S.D.N.Y.1982), *aff'd in part, rev'd in part on other grounds*, 732 F.2d 278 (2d Cir.1984). The *Dale* opinion clarifies the notion that witnesses owe a duty solely to the court, and are only subject to sanctions imposed by the trial judge. *Id.* This delineation of a witness' duty makes it apparent that Dr. Burman, as a consultant and potential witness and ultimately as an expert witness, owed no legal duty to Dr. Kahn, an adverse litigant. The Court is confident that Michigan appellate courts would reach the same conclusion. Any other result would contravene the policy rationale underlying *Friedman* and would have a chilling effect on the solicitation of expert evaluation of potential claims prior to filing.[2] Thus, the Court is compelled to grant defendant's motion to dismiss Dr. Kahn's negligence claim based on the absence of a legal duty.

### Count II—Fraudulent Misrepresentation

Dr. Kahn has raised two separate theories of misrepresentation in his complaint. Count II pleads fraudulent misrepresentation, which Michigan courts have distinguished from the cause of action for innocent misrepresentation set forth in Count III. *See, e.g., United States Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 113–21, 313 N.W.2d 77 (1981).

To prevail on his claim of fraudulent misrepresentation, Dr. Kahn must establish (1) that Dr. Burman made a material misrepresentation (2) which was false and (3) which Dr. Burman knew to be false. Further, Dr. Kahn must prove that (4) Defendant Burman intended Plaintiff Kahn to act

2. The policy considerations that support the Court's decision to extend witness immunity to Dr. Burman's unsworn reports also confirm the propriety of the Court's refusal to expand the concept of duty in such a manner. The Court does not take lightly Judge O'Connor's admonition that "it is necessary for [witnesses] to be protected not only from civil liability but also from the danger of even an unsuccessful civil action." *Lewis*, 126 Ariz. at 564, 617 P.2d at 72 (quoting **Restatement (Second) of Torts** § 584 comment). If the Court were to recognize a duty running from witnesses and potential witnesses to adverse litigants, the protection that Judge O'Connor emphasized would be endangered.

upon the false statement and that (5) Plaintiff Kahn did act in reliance upon the misrepresentation (6) thereby suffering injury. *Id.* at 114, 313 N.W.2d 77; *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). Based on the underlying facts of the instant case, Dr. Kahn obviously cannot assert a fraudulent misrepresentation claim against Dr. Burman.

■ Dr. Kahn cannot justifiably argue that he "relied" upon any statement in Dr. Burman's prelitigation report. Dr. Burman gave that report only to Attorney Gray, who may have relied on the report in deciding to file a medical malpractice action against Dr. Kahn and others. Dr. Kahn, however, did not rely on Defendant Burman's report in any sense of the word; the incidental impact that Attorney Gray's alleged reliance on the report may have had on Dr. Kahn is not the type of reliance that is necessary to sustain an action for misrepresentation. *See Eaton Corp. v. Easton Associates, Inc.*, 728 F.2d 285, 292–93 (6th Cir.1984) (applying Michigan law and citing Restatement (Second) of Torts § 531, court reasoned that "[o]ne who makes a fraudulent misrepresentation is subject to liability to the person or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation. . . .").

■ Additionally, the opinions contained in Dr. Burman's report do not constitute "statements" for the purpose of establishing on actionable misrepresentation. As a retained expert, Dr. Burman was hired to render an opinion, not to make statements of fact. Such expressions of opinions are not tantamount to representations of "existing or pre-existing facts which are susceptible of knowledge." *Platsis v. E.F. Hutton & Co., Inc.*, 642 F.Supp. 1277, 1293 (W.D.Mich.1986), *aff'd*, 829 F.2d 13 (6th Cir.1987). Thus, Dr. Kahn cannot identify any statement upon which he can assert a claim against Dr. Burman for misrepresentation. The defendant's motion for summary judgment on Dr. Kahn's fraudulent misrepresentation claim must be granted.

### Count III—Innocent Misrepresentation

■ Dr. Kahn's innocent misrepresentation claim, though recognized under Michigan law, is riddled with fatal flaws. Innocent misrepresentation under Michigan law requires proof of five elements: (1) a contractual relationship between Plaintiff Kahn and Defendant Burman in which (2) defendant made a false representation (3) on which plaintiff relied (4) resulting in injury to plaintiff (5) where plaintiff's loss inured to the benefit of defendant. *U.S. Fidelity*, 412 Mich. at 116, 313 N.W.2d 77; *Eaton Corp. v. Magnavox Co.*, 581 F.Supp. 1514, 1535 (E.D.Mich.1984). Plaintiff Kahn's claim satisfies few, if any, of these requirements.

To bring his claim within the contractual setting necessary under the innocent misrepresentation theory, Dr. Kahn argues that he was a third party beneficiary of the express or implied contract of employment between Attorney Gray and Dr. Burman. It is well-settled, however, that third party beneficiaries are not contractually related parties for the purpose of innocent misrepresentation. *U.S. Fidelity*, 412 Mich. at 117 n. 9, 313 N.W.2d 77. Therefore, Dr. Kahn cannot establish a valid claim against Dr. Burman for innocent misrepresentation.

Dr. Kahn's innocent misrepresentation claim is also deficient in that Dr. Kahn cannot establish reliance, *see Easton Assocs.*, 728 F.2d at 292–93, and cannot identify a false statement made by Dr. Burman. *See Platsis*, 642 F.Supp. at 1293. Consequently, the Court must grant defendant's motion for summary judgment on Dr. Kahn's claim as set forth in Count III.

### Count IV—Defamation

With respect to the report that Dr. Burman prepared for Attorney Gray prior to the filing of the state malpractice claim, plaintiff's defamation claim does not even warrant consideration on the merits. Any claim that Dr. Kahn could have raised based on the prelitigation report is barred by the Michigan statute of limitations governing defamation. *See* Mich.Comp.Laws Ann. § 600.5805(7) (West 1987). Thus, Dr. Kahn's defamation claim can only be prem-

ised on statements made in the second report that was prepared during the course of litigation.

In recognizing the tort of defamation, Michigan courts have adopted the Restatement formulation of the elements of defamation. To prevail on his defamation claim, Dr. Kahn must prove: (1) that Dr. Burman made a false and defamatory statement concerning Dr. Kahn; (2) that Dr. Burman published the statement to a third party in an unprivileged manner; (3) that Dr. Burman was guilty of fault amounting to at least negligence in publishing the statement; and (4) *either* actionability of the statement irrespective of special harm *or* the existence of special harm caused by the publication. *Rouch v. Enquirer & News of Battle Creek,* 427 Mich. 157, 173–74, 398 N.W.2d 245 (1986); Restatement (Second) of Torts § 558 (1977). When judged against these criteria, Dr. Kahn's defamation claim cannot withstand defendant's motion to dismiss.

■ In formulating the opinions that he expressed in his second report, Dr. Burman relied on medical information that was produced in connection with the state court malpractice suit. Most importantly, Dr. Burman's report merely provided Attorney Gray with subjective evaluations of objective medical data. Thus, Dr. Burman's report was limited to statements of opinion. These statements of subjective medical opinion based on objective medical data cannot form the basis for a defamation action under Michigan law. *See Swenson-Davis v. Martel,* 135 Mich.App. 632, 637 n. 3, 354 N.W.2d 288, *leave to appeal denied,* 419 Mich. 946 (1984) (quoting Restatement (Second) of Torts § 566 comment c, court stated that " '[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not in itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.' ").

The United States Supreme Court's decision in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) was the genesis of the rule proscribing civil liability for defamation based on expressions of opinion. The *Gertz* court provided constitutional protection for the expression of opinions in holding that "there is no such thing as a false idea" under the First Amendment. *Id.* at 339, 94 S.Ct. at 3007. Courts have construed this language to mean that an opinion, which cannot be "false" pursuant to *Gertz,* cannot constitute actionable defamation. *See, e.g., In re Matter of Yagman,* 796 F.2d 1165, 1172 (9th Cir.1986). In light of the facts that Dr. Burman only communicated his opinions to Attorney Gray, and Attorney Gray merely used Dr. Burman's opinions for trial preparation, there can be no doubt that the opinions expressed in Dr. Burman's second report cannot form the basis for a defamation suit against Dr. Burman. Therefore, the Court must grant defendant's motion to dismiss Count IV.

### Count V—Intentional Infliction of Emotional Distress

■ Count V of Dr. Kahn's complaint attempts to fit Dr. Burman's reports into the theory of intentional infliction of emotional distress. Michigan law defining the scope of this tort indicates, however, that Plaintiff Kahn's Count V theory clearly is inapplicable to Dr. Burman's preparation and submission of his reports. Under Michigan law, four elements must be established in order to prevail on an intentional infliction of emotional distress theory: (1) "extreme and outrageous" conduct (2) that is intentional or reckless, and (3) causes (4) severe emotional distress. *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 602, 374 N.W.2d 905 (1985). The primary weakness in Dr. Kahn's claim is that Dr. Burman's actions do not satisfy the "extreme and outrageous" conduct standard.

In adopting the Restatement definition of "extreme and outrageous" conduct, *see id.* at 602–03, 374 N.W.2d 905, the Michigan Supreme Court espoused a narrow reading of the conduct necessary to establish intentional infliction of emotional distress. When tested against the Restatement standard, Dr. Burman's reports clearly are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

as atrocious, and utterly intolerable in a civilized community." *Id.* at 603, 374 N.W. 2d 905 (quoting from Restatement (Second) of Torts § 46 comment); *see also Cebulski v. City of Belleville,* 156 Mich.App. 190, 401 N.W.2d 616 (1986) (affirming lower court's decision to grant summary judgment).

The Michigan Court of Appeals has ruled that an attorney's act of filing a "groundless" lawsuit does not qualify as intentional infliction of emotional distress. *See Early Detection Center, P.C. v. New York Life Ins. Co.,* 157 Mich.App. 618, 625–27, 403 N.W.2d 830 (1986). In light of this holding, Plaintiff Roger Kahn cannot possibly argue that Dr. Burman's preparation and delivery of his reports constitutes intentional infliction of emotional distress under Michigan law. As a result, the Court must grant defendant's motion to dismiss Count V.

### Count VI—Loss of Consortium

The final matter before the Court is Plaintiff Sandra Kahn's claim for loss of society and companionship of her husband, Roger Kahn. Because Sandra Kahn's claim is derivative and necessarily dependent upon Dr. Kahn's claims as stated in Counts I through V, the Court must dismiss her loss of consortium action based on the Court's disposition of Counts I through V. *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 25–26, 398 N.W.2d 882 (1986); *Bourassa v. A.T.O. Corp.,* 113 Mich.App. 517, 520, 317 N.W.2d 669 (1982). Therefore, an appropriate order will enter dismissing this action in its entirety.