Plaintiffs in this case sought compensatory and punitive damages for a number of alleged negligent, wanton and intentional acts committed by the defendants. The trial court granted all defendants' motions to dismiss and this appeal ensued. We affirm in part, reverse in part, and remand. *Page 1210 
The following alleged facts provide the basis of this suit. On Sunday, April 19, 1981, Patricia Harris, accompanied by her mother, Ann Harris, took her son Danny to the Baptist Medical Center emergency room. Danny was eight days old at the time and had a large blister-like sore on his stomach. Dr. Robert E. Wiltsie examined the child, diagnosed the injury as a case of suspected child abuse and, pursuant to Code of 1975, § 26-14-3, notified the Montgomery Police Department. On that same day Officer G.M. Meads conducted an investigation of the report under the mandate of § 26-14-3. Patricia Harris was taken to police headquarters for questioning where she later confessed to having abused or neglected her child. In September 1981 a report of the incident was sent to the Department of Pensions and Security as required by § 26-14-3.
On March 1, 1982, Ann and Patricia Harris filed this action in the Circuit Court of Montgomery County against the City of Montgomery (City), Officer G.M. Meads, Baptist Medical Center (BMC), Dr. Robert Wiltsie, and others. All defendants filed motions to dismiss based on failure to state a claim upon which relief could be granted and immunity from suit under Code of 1975, § 26-14-9. In addition, the City and Officer Meads cited Code of 1975, § 11-47-23, as a bar to this suit. The trial court granted all the defendants' motions to dismiss. Plaintiffs' motion to vacate the judgment or in the alternative to amend the judgment to dismissal with leave to amend was denied by the trial court. Plaintiffs then appealed.
 I
Plaintiffs first contend that their complaint stated a cause of action under 42 U.S.C. § 1983, upon which relief could be granted. Section 1983 reads as follows:
 "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."
All defendants acknowledge that they were acting pursuant to a state statute. The complaint is unclear as to which federal rights, if any, were supposedly violated.
Count Four reads in pertinent part:*
 "22. On or about March 19, 1981, Defendants Meads and D acting under color of law did take Plaintiff Patricia Harris unlawfully into custody and did unlawfully confine her in a small isolated room at Police Headquarters in Montgomerym Alabama.
 "23. By confining her in said room, by threat of physical harm, and by threat to take her eight day old child into custody, Defendants Meads and D did force Plaintiff Harris to involuntarily confess to child abuse and/or neglect.
 "24. All this was done in violation of Plaintiff Patricia Harris's Federal constitutional rights and Federal law, in particularly the fourth, fifth, sixth and fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983."
It is necessary to point out the following as stated by this Court in Martin v. Fidelity Cas. Co. of New York,421 So.2d 109, 111 (Ala. 1982):
 "`The well-understood position of an appellate court reviewing the grant of a motion to dismiss is, taking the allegations of the complaint most strongly in favor of the pleader, to determine whether the plaintiff could prove any set of facts in support of his claim which would entitle him to relief. Rule 12, ARCP, and commentary.' Jones v. Lee County Commission, 394 So.2d 928, 930, (Ala. 1981). Cf. Lloyd v. Community Hospital of Andalusia, Inc., 421 So.2d 112 (Ala. 1982). However, it is for the plaintiff and not the court to articulate the claims forming a basis for relief. `The liberalized rules *Page 1211 
of procedure have not eliminated pleadings as the principal means by which parties themselves choose the issues which they wish to litigate.' Zeigler v. Baker, 344 So.2d 761, 763 (Ala. 1977)."
In the present case, plaintiffs have not chosen the issues they wish to litigate. Whether or not there was a violation of federal rights here, plaintiffs make no specific connection between actions which occurred and those rights allegedly violated. Therefore, we agree with the defendants and the trial court that plaintiffs' complaint failed to state a claim as to these defendants upon which relief under § 1983 could be granted.
 II
Next, plaintiffs contend there are two reasons that this Court should find that the defendants were not immune from suit in this case. First, they argue that the immunity statute, §26-14-9 does not apply. Next, they assert that if this Court should find that the immunity statute does apply it is unconstitutional. As we understand the complaint, the various counts alleged that due to the negligent, wanton and intentional acts of defendants, Patricia Harris was unlawfully arrested, falsely imprisoned, humiliated, embarrassed, and that she suffered physical pain. The plaintiffs asserted that this was due to the negligent, wanton and intentional acts of defendants.
The complaint is too lengthy to quote in full; however, the following pertinent parts of Counts One and Two state:
 "11. Defendant Wiltsie or Defendants A, B and C or all of them negligently diagnosed said ailment as an intentional caused second degree burn despite the description of the symptoms by Plaintiffs. At all times Defendant Wiltsie and Defendants A, B and C should have known that the blister-like sore was the result of a common skin ailment in new born babies.
 "12. The failure to properly diagnose said ailment was the result of failure of Defendant Baptist Hospital to properly supervise, train, control and set adequate medical standard for its medioal personnel.
 "13. Defendant Wiltsie and/or Defendants A, B, and C then notified the Montgomery Police Department and made the accusation that Plaintiffs had abused the child.
 "14. As the proximate result of Defendants Wiltsie, A, B, C and Baptist Hospital negligence, Plaintiffs were publicly accused of child abuse, suffered great pain of body and mind, humiliation of public arrest, imprisonment, trama and permanant police records.
". . .
 "16. Defendant Wiltise and/or Defendants A, B, and C did wantonly and with reckless disregard for the rights of Plaintiffs and the health of the child, diagnosed said ailment as an intentional second degree burn when at all times the Defendants knew or recklessly disregarded symptoms that showed such ailment to be a common skin ailment in new born babies.
 "17. The wanton failure to properly diagnose said ailment was the result of the total failure and reckless disregard for the health of its emergency room patients by Baptist Hospital.
 "18. Defendant Wiltsie or Defendants A, B, C, or all wantonly or with utter disregard for Plaintiffs' health and well being and without probable cause did notify the Montgomery Police Department and accuse Plaintiffs of abusing the child.
 "19. As the proximate consequence of the wantonness and utter disregard for Plaintiffs' health and well-being by Defendants Wiltsie, A, B, C, and Baptist Hospital, Plaintiffs suffered great pain of body and mind, humiliation of public accusation, public arrest, imprisonment, trama and permanent police records."
The Child Abuse Reporting Act, Code of 1975, § 26-14-9, clearly grants both civil and criminal immunity to persons reporting suspected child abuse. This section reads as follows: *Page 1212 
 "Any person, firm, corporation or official participating in the making of a report or the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
Code of 1975, § 26-14-3, names those responsible for the mandatory reporting of child abuse. It reads:
 "(a) All hospitals, clinics, sanitariums, doctors, physicians, surgeons, medical examiners, coroners, dentists, osteopaths, optometrists, chiropractors, podiatrists, nurses, school teachers and officials, peace officers, law enforcement officials, pharmacists, social workers, day care workers or employees, mental health professionals or any other person called upon to render aid or medical assistance to any child, when such child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority.
 "(b) When a report is made to a law enforcement official, such official subsequently shall inform the department of pensions and security of the report so that the department can carry out its responsibility to provide protective services to the respective child or children." (Emphasis added.)
A failure to report suspected abuse would subject those named in § 26-14-3 to possible criminal prosecution, pursuant to §26-14-13 which states:
 "Any person who shall knowingly fail to make the report required by this chapter shall be guilty of a misdemeanor and shall be punished by a sentence of not more than six months' imprisonment or a fine of not more than $500.00."
The record indicates no actions on the part of defendants Wiltsie, BMC or the City other than actions responding to the mandate of the Child Abuse Reporting Act. Dr. Wiltsie's professional examination of the child caused him to suspect child abuse, and he dutifully reported it to the Montgomery Police Department. BMC's role in this reporting is unclear; however, the complaint asserts a cause of action against BMC on the grounds that BMC negligently failed "to properly supervise, train, control, and set adequate medical standard [sic] for its medical personnel." Plaintiffs claim that by failing to do so BMC negligently allowed Dr. Wiltsie and certain other fictitious defendants to notify the Montgomery Police Department of suspected child abuse. There are no allegations in the complaint or amended complaint against these defendants for which § 26-14-9 does not provide immunity. Both Dr. Wiltsie and BMC are clearly named as responsible for reporting under §26-14-3, and are immune from suit under § 26-14-9. The City shares the individual defendant's immunity under § 26-14-9 and those individuals are made absolutely immune.
With regard to Officer Meads's investigating and reporting of the incident, we agree that this falls within the purview of the immunity granted under § 26-14-9. However, we cannot agree with the trial court that Officer Meads is absolutely immune from suit in this case. There are allegations of false imprisonment, false arrest, and, apparently, defamation in the complaint, i.e., allegations of tortious conduct on the part of the officer beyond those actions protected by the immunity statute. This conduct, if proved, would remove the officer from the purview of § 26-14-9. We express no opinion as to whether the elements of these torts have been properly stated.
 III
Plaintiffs argue that if this Court finds the defendants are immune under § 26-14-9, then such immunity violates § 13 of the Alabama Constitution of 1901. We disagree. *Page 1213 
This Court held in Alabama State Federation of Labor v.McAdory, 246 Ala. 1, 18 So.2d 810 (1944):
 "[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. . . ." 246 Ala. at 9, 18 So.2d at 815.
This Court has also held that legislation which alters a common-law or statutory cause of action is not automatically invalid under § 13. Grantham v. Denke, 359 So.2d 785 (Ala. 1978).
The provisions of the Child Abuse Reporting Act clearly survive constitutional scrutiny under the established rule stated by this Court in Grantham and followed in later cases, includingFireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334 (Ala. 1981). This Court has upheld legislation attacked as violating § 13 if one of two conditions is satisfied:
(1) The right is voluntarily relinquished in exchange for equivalent benefits or protection, or
(2) The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.
Clearly, this Act meets the requirements of the second condition in that there has been a valid exercise of the police power to eradicate child abuse. That society receives a great benefit in having children protected from abuse and neglect needs no amplification. It is equally clear that the legislature could conclude that the immunity provision helps accomplish this goal and is thus specifically justifiable as an exercise of the police power.
The federal Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101-5106, was passed in 1974. Section 5103 (b)(2) expressly provides that states must grant the required immunity for mandatory reporting and permissive reporting of known or suspected child abuse or neglect in order to qualify for assistance. Thus, the immunity provision is further justified as a means for securing funds to eradicate the perceived social evil of child abuse. It should be noted that not only Alabama but all fifty states, the District of Columbia, and four American territories have similar statutes with very similar immunity provisions. See "CHILD ABUSE AND NEGLECT — State Reporting Laws," dated May 1978, compiled by Douglas J. Besharov, Director, National Center on Child Abuse and Neglect, United States Children's Bureau, United States Department of Health, Education and Welfare.
 IV
Plaintiffs assert that Code of Ala. 1975, § 11-47-23, the municipal non-claim statute, does not apply to either the City or Officer Meads in this case, or alternatively that the statute was satisfied. That statute reads:
 "All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." (Emphasis added.)
The present tort occurred on April 19, 1981, and suit was filed on March 1, 1982. The non-claim statute thus clearly bars plaintiffs' claim against the City. Alternatively, plaintiffs claim compliance with the statute in the fact that City agents knew that the plaintiffs had started procedures for filing suit. Assuming such "constructive notice" existed, it does not satisfy the following statutory requirements of § 11-47-192:
 "No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of *Page 1214 
his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed." (Emphasis added.)
This Court has held that the requirement of § 11-47-192 and the non-claim statute are to be construed as being in pari materia.
See Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937).
The City would have us find not only that the statute applies to it in this case but that the statute extends to actions commenced against employees of the City, and here to Officer Meads. The City argues in brief that "all acts done by Officer Meads in this case were nothing more than ministerial acts done in carrying out the policies of the City of Montgomery, and any claim against Officer Meads as an individual is in effect a claim against the City of Montgomery."
We do not read the non-claim statute as requiring that actions against employees of the City be commenced within this six-month period. The statute refers to "all claims against the municipality." The action as to Officer Meads is an action in tort against an individual and was timely filed by the plaintiffs in this case. We are not persuaded that the claim against the officer is in effect a claim against the City. The trial court failed to distinguish between the grant of the motion to dismiss with regard to the City and Officer Meads. We, therefore, reverse the order as to Officer Meads and remand to the trial court. The grant of the motion to dismiss with regard to Officer Meads was inappropriate.
 V
In conclusion, defendants Wiltsie, BMC, and the City come within the purview of § 26-14-9 and are immune from suit in the present case. Also, with regard to the City, this action is barred by plaintiffs' failure to comply with § 11-47-23. The trial court properly granted these defendants' motions to dismiss. In our view, however, the trial court erred in granting defendant Meads's motion to dismiss. It is unclear from the record whether the plaintiffs could prove facts which would entitle them to relief with regard to Officer Meads. The complaint did allege actions by the officer which would remove him from the protection of the immunity statute, and we have held that the claim is not barred by § 11-47-23. Therefore, the grant of Officer Meads's motion to dismiss was improper. The cause, therefore, must be and is reversed and remanded as to the claim against Officer Meads, and is otherwise affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
FAULKNER, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., dissent.
JONES, J., concurs in part; and concurs in the result in part.
* The complaint is set out in these excerpts exactly as it appears in the record.