496 So.2d 1225 (1986)
Maria Tillero, wife of/and Greg GROSS
v.
Willie HAIGHT and Ochsner Foundation Hospital.
No. 86-CA-94.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Charles P. Ciaccio, Victoria L. Bartels, Wessel, Bartels & Ciaccio Law Corp., New Orleans, for Maria Tillero and Greg Gross plaintiffs-appellants.
Charles F. Gay, Adams & Reese, New Orleans, for Willie Haight and Ochsner Foundation Hosp., defendants-appellees.
Before CHEHARDY and GRISBAUM, JJ., and J. BRUCE NACCARI, J. Pro Temp.
J. BRUCE NACCARI, Judge Pro Tem.
This is a defamation case, arising from an investigation of suspected child abuse. The plaintiffs appeal dismissal of their case by summary judgment.
The plaintiffs, Maria Tillero Gross and Greg Gross, are the parents of a set of triplets, born prematurely at Ochsner Hospital on December 22, 1982 and cared for in the neo-natal intensive care unit. Two of the babies were released in February, while Anthony, the smallest, was released March 4, 1983. The parents took Anthony back *1226 for examination on March 11, when he was readmitted with pneumonia and chest x-rays revealed rib fractures. The hospital personnel treating Anthony suspected that child abuse had taken place during the week the child was at home, as earlier x-rays had not shown fractures and they were unable to detect any nutritional deficiency or other explanation for the fractures.
The case was referred to the Jefferson Parish Child Protection Agency in accordance with LSA-R.S. 14:403 on March 14, 1983. A social worker from the Office of Human Development and two detectives from the Jefferson Parish Sheriff's Office Juvenile Division visited the Gross's home. On March 18 the investigation was discontinued because the two physicians who reviewed the x-rays determined that the fractures had occurred more than eight days before Anthony's readmission and must have happened during the time he was hospitalized. The case was officially closed on March 24, 1983.
The parents filed suit on January 31, 1984 against Willie Haight,[1] the social worker who referred the case to the Child Protection Agency, and Ochsner Foundation Hospital, alleging that because of the erroneous report they had been subjected to humiliation, abuse, and damage to their reputation, and had suffered emotional and mental distress.
The defendants filed a motion for summary judgment claiming immunity from civil and criminal liability under LSA-R.S. 14:403, which was denied on March 21, 1985. A second motion for summary judgment in which the defendants maintained there was no publication by any defamatory statement, was granted on October 29, 1985. No reasons for judgment were furnished for either judgment. This appeal followed.
The issue before this court is whether summary judgment is appropriate in this case. The plaintiffs assert the existence of two questions of material fact: (1) whether there was publication of defamatory statements in the investigation; and (2) whether the hospital acted in good faith.
The applicable statute in cases of suspected child abuse is LSA-R.S. 14:403, which provides for mandatory reporting, as follows in pertinent part:
C. (1) Any person, including licensed physicians, interns or residents, nurses, hospital staff members, teachers, social workers, coroners, and other persons or agencies having responsibility for the care of children, having cause to believe that a child's physical or mental health or welfare has been or may be further adversely affected by abuse or neglect or that abuse or neglect was a contributing factor in a child's death shall report in accordance with Subsection D of this Section.
. . . . .
D. (1) Reports reflecting the reporter's belief that a child has been abused or neglected or that abuse or neglect was a contributing factor in a child's death shall be made to the parish child welfare unit or the parish agency responsible for the protection of juveniles and, if necessary, to a local or state law enforcement agency....
Summary judgment is appropriate where there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. The burden of proof is upon the mover. White v. Baker Manor Nursing Home Inc., 400 So.2d 1168 (La. App. 1st Cir.1981), writ denied 403 So.2d 68 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977).
The five elements of a defamation claim are defamatory words, publication to a third party, falsity, malice, and injury to the plaintiff. Cangelosi v. Schwegmann Bros. Etc., 390 So.2d 196 (La.1980). At issue here is whether publication actually occurred. Under the statute regarding *1227 child abuse, quoted above, communication that is limited to persons directly concerned with and necessary to the investigation is privileged and does not constitute "publication".
The appellant argues that Ochsher published its suspicions of child abuse to outsiders, namely the Child Protection Authority and Jefferson Parish Sheriff's Office, and to nurses and other employees within the hospital who had no need to know. Further, the hospital is not protected by the statutory privilege because it did not have reasonable grounds for the referral. The appellee argues that its physicians did not convey information about the case to anyone who was not involved in the child's treatment or the investigation. All contacts and reports by investigating officers of the Jefferson Parish Sheriff's Office Juvenile Division are confidential under the Louisiana Code of Juvenile Procedure.
Because the statutory privilege does not apply unless the person reporting child abuse or cooperating in an investigation has "cause to believe that a child's physical or mental health or welfare has been or may be further adversely affected by abuse or neglect" and does so "in good faith", we consider this question first.
The affidavits submitted with the first motion for summary judgment reveal that the physicians having daily contact with the children and family in the neo-natal unit at Ochsner believed that the family situation was stressful and the triplets were at risk of abuse. The following statements appear:
That Anthony Gross was the smallest, the most severely ill and most irritable of the triplets;
That the birth of three premature triplets is a known indicator of familiar [sic] stress of which he was aware in his daily contact with the parents of the triplet named Anthony Gross;
(Jay Goldsmith, M.D., Affidavit)
That the child had been born premature, in a multiple birth situation, where known stresses were undergone by the family, with a two year old child at home;
(Marcia Sharp, M.D., Affidavit)
That in connection with this treatment she noted that the family, with the birth of premature triplets, was undergoing a stressful situation;
That the father, Greg Gross, expressed hostility toward the hospital personnel and exhibited difficulty in relating to the nursing staff;
That because of the multiple births, Maria Tillero Gross, mother of the triplets, experienced difficulty in coping with the situation and arrangements were made to secure the family a private duty nurse at home;
(Dian Denny, M.D., Affidavit)
With their memorandum in opposition to the second motion for summary judgment the defendants submitted excerpts from the physicians' deposition as follows:
From the deposition of Marcia Sharp, M.D.:
Q. At the time you reviewed the x-ray on March 14, who was the radiologist that you reviewed it with?
A. Dr. Marvin Kogutt.
Q. Was there any discussion with Dr. Kogutt concerning the age of the fractures?
A. Not that I recall.
From the deposition of Marvin S. Kogutt, M.D.:
Q.... By looking at the x-ray of March 11, 1983, of Anthony Gross and noting the bone formation around the fractured ribs, in your opinion, what would have been the approximate length of time between the fracture of those ribs and the taking of the x-ray?
A. Okay. At least fourteen (14) days.
. . . . .
Q. Is there any reason why you didn't just put that in the radiology report?
A. Only that it really wouldn't be a standard way of dictating it. For example, on all the various fractures I would see, I wouldn't document or approximate *1228 the age. It's just not a standard way of doing it, you know.
Q. If someone had asked you at that time, your opinion on that, would you have told them around fourteen (14) days?
A. Yes.
We find that the depositions of the three physicians from the neo-natal unit indicate that the physicians had reason to consider the possibility of child abuse and were in good faith in making the referral. No documents submitted by the parents allege facts to suggest otherwise; however, the deposition of Dr. Marcia Sharp, who made the referral, and that of Dr. Marvin S. Kogutt, who reported the x-ray, suggest that Dr. Sharp acted in haste without inquiring whether the fractures could have occurred before the baby left the hospital. Although a chest x-ray on February 17, 1983 showed no fractures, no x-ray had been made between that time and March 4 when he was released. Despite the error in judgment, we believe that the action was taken in good faith by Dr. Sharp, with Dr. Goldsmith's concurrence, out of concern for the welfare of the child, who was in fact her primary responsibility.
As to publication, the documents indicate that the hospital followed the statutory procedures and that the only persons contacted other than Ochsner physicians were those necessary to the investigation: Hattie Santiago, a social worker with the Child Protection Division of the Office of Human Development for the Louisiana Department of Health and Human Resources; Jefferson Parish Sheriff's Office Juvenile Division Detectives Juan Perez and Howard Wright, whose reports are by statute confidential; Dr. Samuel Y. Brown, Jr., pediatric consultant for Jefferson Parish to the Office of Human Development, Child Protection Service, who investigated the case; and Linda Parker, a nurse in the Ochsner neo-natal unit assigned to treat the triplets.
The parents base their allegation of publication to other Ochsner nurses and personnel on their perceptions of change in the nurses' attitudes toward them after the referral. In his deposition and his affidavit Greg Gross reported that the nurses became "sharp" with him and would not answer questions on Anthony's progress, whereas in the past the nurses were very friendly to him. The mother attested to the same change, and stated further that when she returned to the hospital after Anthony's second discharge, a nurse who had been cold to her during the investigation approached her in a friendly way and with tears in her eyes. In response to questions about whether the Gross's neighbors had been told, Mrs. Gross stated that she herself had notified one of them that the Juvenile officers might question her but did not know whether the officers actually did so.
The purpose of Louisiana's statute on child abuse is to protect children by mandatory reporting of suspected cases of abuse. It would be most unfortunate if the threat of defamation claims should cast a chilling effect upon the willingness of persons to report suspected cases, where reasonable cause for suspicion exists. In the case before us the plaintiffs' child was the hospital's patient and primary responsibility, in whose interest the personnel acted in good faith and followed the statutory procedures.
Accordingly, we hold that the plaintiffs have failed to set forth specific facts showing there is a genuine issue of the defendants' lack of good faith in referring the case to child protection authorities or of publication to anyone who was not privileged to receive the information. Summary judgment is appropriate. La.C.C.P. arts. 966, 967; White v. Baker Manor Nursing Home, Inc., supra. The judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Mr. Haight died shortly after the petition was filed and no claims against his estate have been pursued.