Michael J. ELMORE, as an individual and Michael J. Elmore as next friend and on behalf of Michael John Elmore, minor child, Appellants (Plaintiffs),

v.

Gailene VAN HORN, as an individual, and Fleming Associates, a private association, Appellees (Defendants).

No. 92–12.

Supreme Court of Wyoming.

Dec. 31, 1992.

Rehearing Denied Feb. 4, 1993.

Carol Seeger (argued) and Michael A. Maycock of Maycock Law Offices, Gillette, for appellant.

Rebecca A. Lewis (argued) of Hirst & Applegate, Cheyenne, for appellee.

Before THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ., and PATRICK, D.J.

CARDINE, Justice.

This appeal involves a claim for damages against a licensed professional counselor for her evaluation of and conclusion that a minor child had been the victim of sexual abuse. The counselor interviewed the child, reported her suspicions to law enforcement, signed an affidavit, and testified in a subsequent custody hearing. The district court determined that the counselor had immunity for her actions and granted her motion for summary judgment.

We affirm.

Appellants present the following issues for our review:

1. Did the District Court err in finding that as a matter of law the appellee mental health care providers were immune from suit for their negligence and intentional acts in their professional capacities in their diagnosis, evaluation and counseling of the appellant based on case law immunity which grants immunity to witnesses and actions of those witnesses in the course of judicial proceedings because the appellees later testify in a judicial proceeding.

2. Did the District Court err in finding that as a matter of law the appellee mental health care providers were immune from suit for their negligence and intentional acts in their professional capacities in their diagnosis, evaluation and counseling of the appellant based on statutory immunity which provides immunity to those who, with reasonable cause and in good faith, report suspected child abuse.

* Chief Justice at time of oral argument.

3. Did the District Court err in finding that the appellees owed no duty to the appellant Michael John Elmore with whom they a had a professional psychological relationship.

4. Did the District Court err in finding that the appellees did not owe a duty to the appellant, Michael J. Elmore, the father.

5. Did the District Court err in finding that the appellants' claims are barred by the statute of limitations.

6. Did the District Court err in finding that the appellee acted within the applicable standards of care, therefore, as a matter of law the appellants' claims must fail.

7. Did the District Court err in finding that as a matter of law the appellants have no claim for intentional infliction of emotional distress under Wyoming Law.

In contrast, appellees present this issue:

Was summary judgment appropriately rendered in favor of defendants/appellees Gay Van Horn and Fleming Associates?

### FACTS

Appellee Michael J. Elmore (the father) was divorced from Mary Margaret Ostlund (the mother) in 1985. The original divorce decree provided for the mother to have custody of their minor son (MJ), and allowed the father to have visitation rights.

After returning home from visiting his father in Gillette sometime in November of 1987, MJ allegedly complained of pain in his buttocks area. His mother took him to a physician. The physician determined that there was some redness in the anus area that could have been caused by several things including abuse or even constipation. During the visit on December 15, 1987, the physician recommended psychotherapy for MJ since he was exhibiting "bizarre" behavior by hitting his mother, tearing the exam room apart and acting "totally out of control." The mother took MJ to the physician again in January and March of 1988. The physician again spoke with the mother at the end of April and

noted that he felt "very strongly" that MJ should get counseling.

On May 5, 1988, the mother took MJ to Gailene Van Horn, a licensed professional counselor employed by Fleming Associates, a counseling firm. The mother informed Van Horn that she was concerned about MJ's behavioral problems and about potential sexual abuse that might be occurring while MJ was visiting his father in Gillette.

Van Horn began therapy sessions with MJ. Van Horn conducted approximately fourteen sessions with MJ. The dates of the sessions include: May 5, May 9, May 13, May 18, May 25, June 2, June 10, June 24, June 30, July 7, July 21, and August 3, 1988. As the sessions progressed, Van Horn began to have concerns that abuse was indeed occurring. On June 14, 1988, she contacted Mr. Steinberg of DPASS (now Department of Family Services). She asked Mr. Steinberg about the procedure for reporting child abuse when the parents live in different cities. After speaking with Mr. Steinberg, Van Horn recommended to the mother that she should report the potential problem to Laramie County DPASS. Van Horn did not make a report to DPASS herself.

On July 18, 1988, an attorney representing the mother in the custody dispute brought an affidavit to Van Horn's office. The affidavit, which Van Horn signed, stated that "[MJ] has revealed information to me which supports the conclusion that sexual abuse has been occurring to him during visits to his father in Gillette, Wyoming."

As Van Horn began having more concerns about MJ, she contacted Detective Owen from the Cheyenne Police Department and asked Detective Owen to observe a session with MJ. Detective Owen observed the July 21 and August 3; 1988 sessions with MJ at Van Horn's office. According to Van Horn, MJ related specific details of sexual abuse to her during their session. Van Horn understood that Detective Owen was going to refer the matter to Campbell County DPASS for further investigation.

The affidavit that Van Horn signed on July 18, 1988, was used in a show cause

hearing, and the father was denied visitation with his son until October 10, 1988. When the court allowed visitation to resume, it could only occur under supervised conditions. In February 1989, a trial was conducted on the issue of custody. The district judge who presided over the custody trial concluded that "Gay Van Horn lied to the Court under oath either in her affidavit of July 18, 1988, or today (February 22 [1989]). Because of that and because there is no independent corroboration of her testimony, the Court finds it to be entirely without merit and disregards it entirely." Van Horn later admitted that she did not read the affidavit as closely as she should have. After the custody trial, the father was awarded custody of MJ.

After winning custody, the father (appellant) filed this action against Gailene Van Horn and Fleming Associates (appellees) for her handling of the allegations of sexual abuse of MJ. The action was brought by the father, Michael Elmore, and on behalf of MJ, a minor child (his son). Appellants' amended complaint contained the following allegations and counts: 1) negligence in failing to read the affidavit; 2) negligence in diagnosing MJ by failing to obtain sufficient information; 3) intentional infliction of emotional distress; and 4) negligently inflicting severe emotional distress. Appellants also sought punitive damages of $7,635,000.00. Appellees filed an answer to the amended complaint and also filed a motion for summary judgment. Appellees argued that the motion for summary judgment should be granted because the appellees had statutory immunity under W.S. 14–3–205 and W.S. 14–3–209 for reporting child abuse. Appellees also argued, *inter alia*, that summary judgment should be granted because they had witness immunity regarding the affidavit.

On April 3, 1991, the district court entered an order granting partial summary judgment to appellees. The district court granted summary judgment on all remaining counts on November 18, 1991. Appellants filed a timely notice of appeal.

## STANDARD OF REVIEW

We review summary judgments in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Stalkup v. State Dep't of Envtl. Quality,* 838 P.2d 705, 708 (Wyo.1992) (*quoting Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo. 1991)). *See also American Holidays, Inc. v. Foxtail Owners Ass'n,* 821 P.2d 577, 578 (Wyo.1991). In addition, "[s]ummary judgment eliminates the expense and burden of a formal trial when only questions of law are involved; however, this court must be persuaded that no material facts are in dispute and the trial court's judgment was correct as a matter of law." *Powder River Oil Co. v. Powder River Petroleum Corp.,* 830 P.2d 403, 407 (Wyo.1992) (*citing Fiscus v. Atlantic Richfield,* 773 P.2d 158 (Wyo. 1989)). *See also Carroll By and Through Miller v. Wyoming Production Credit Ass'n,* 755 P.2d 869, 871 (Wyo.1988). Under the record presented, if this court can uphold summary judgment under any proper legal theory, it will do so. *Century Ready–Mix Co. v. Campbell County Sch. Dist.,* 816 P.2d 795, 799 (Wyo.1991) (*citing Reeves v. Boatman,* 769 P.2d 917, 918 (Wyo.1989)).

A review of the record indicates that the question of immunity for reporting child abuse was foremost in the district judge's mind when he granted summary judgment. During the final summary judgment hearing, the district court remarked:

I really think that there's a·very important policy question here that must be decided by our supreme court before I force this case to trial, and that is that we are always sympathetic with people wrongfully charged. On the other hand, this question of child abuse is so pervasive in our society that there has to be some semblance of immunity, otherwise everybody will be afraid to do anything. And if I were not to grant summary judgment, it would have a chilling effect

on those individuals of the respective communities in the state who have the very difficult task, in what I consider to be the distasteful task of trying to see if a child has been abused by an adult. It is very difficult to do that.

### STATUTORY "REPORTING" IMMUNITY

In order to determine whether Van Horn can claim reporting immunity, we must examine our statutes. In examining our statutes, we keep in mind the following rule of statutory construction:

"[i]t is our duty to ascertain the intention of the legislature as completely as possible from the language used in the statute itself," *State, Department of Revenue and Taxation, Motor Vehicle Division v. Andrews*, Wyo., 671 P.2d 1239, 1246 (1983), and "if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect." *Oroz v. Hayes*, Wyo., 598 P.2d 432, 434 (1979).

*Carroll By and Through Miller v. Wyoming Production Credit Ass'n*, 755 P.2d at 871–72. *See also Hays v. State ex rel. Wyoming Workers' Compensation Div.*, 768 P.2d 11, 13, 78 A.L.R.4th 959 (Wyo. 1989).

Appellees argue they have immunity for their actions because of the reporting immunity statute. If their actions alleged in the complaint fall within the immunity statute, there is no liability for such actions. *See e.g., Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo.1991), *Sawyer v. City of Sheridan*, 793 P.2d 476, 477 (Wyo.1990).

The State of Wyoming has "a strong public policy of protecting children from child abuse." *City of Laramie v. Hysong*, 808 P.2d 199, 204 (Wyo.1991) (*citing* W.S. 14–3–201 through –215 (1986)). Having deemed the prevention and detection of child abuse a priority, the Wyoming legislature has adopted a statutory scheme which requires reporting and protects those who report child abuse. A person is required to report child abuse as follows:

(a) Any person who knows or has reasonable cause to believe or suspect that a child has been abused or neglected or who observes any child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, shall immediately report it to the child protective agency or local law enforcement agency or cause a report to be made.

W.S. 14–3–205 (1986). Once a report has been made, the reporter has qualified immunity from a criminal or civil action. The immunity statute provides:

Any person, official, institution or agency participating in good faith in any act required or permitted by W.S. 14–3–201 through 14–3–215 is immune from any civil or criminal liability that might otherwise result by reason of the action. For the purpose of any civil or criminal proceeding, the good faith of any person, official or institution participating in any act permitted or required by W.S. 14–3–201 through 14–3–215 shall be presumed.

W.S. 14–3–209 (1986).

Statutory schemes such as Wyoming's which require reporting and also provide immunity are designed to encourage the reporting of child abuse. All fifty states have child abuse reporting immunity statutes. *Harris v. City of Montgomery*, 435 So.2d 1207, 1213 (Ala.1983). Federal legislation provides incentives for states that have child abuse reporting requirements and an immunity protection for those who report. *Harris*, 435 So.2d at 1213 (*citing* Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101–5106). States must grant immunity for mandatory reporting in order to qualify for federal assistance. *Id.* (*citing* 42 U.S.C. § 5103(b)(2)).

Wyoming's reporting immunity statute fits most closely with those statutes that have been interpreted as qualified immunity statutes. Wyoming's statute only provides immunity if the report was made in good faith. W.S. 14–3–209. In contrast, absolute immunity statutes provide immunity even if the report were made with malice. *See e.g., McMartin v. Children's Institute Int'l*, 212 Cal.App.3d 1393, 261 Cal.Rptr. 437, 441 (1989).

Some state statutes have varying levels of immunity. For example, California's statutes provide absolute immunity to "mandatory reporters." *Thomas v. Chadwick*, 224 Cal.App.3d 813, 274 Cal.Rptr. 128, 133 (1990). Mandatory reporters are those who face a criminal penalty if they fail to report. *Thomas*, 274 Cal.Rptr. at 133 n. 8. Those who have a general duty to report but do not face a criminal penalty if they fail to report ("permissive reporters"), are provided qualified immunity. *Id.; see also McMartin v. Children's Institute Int'l*, 261 Cal.Rptr. at 441; *Ferraro v. Chadwick*, 221 Cal.App.3d 86, 270 Cal.Rptr. 379, 381 (1990).

All persons who report child abuse pursuant to the Wyoming reporting statute are "permissive reporters," because they do not face a criminal penalty if they fail to report child abuse. *See* W.S. 14-3-201 through -215 (1986). Looking to the legislative language and by comparing our statute to others, it is clear that the Wyoming legislature intended to provide qualified immunity, that is immunity for all who report child abuse in good faith. Therefore, should it appear that appellee reported this suspected child abuse in good faith, she will be entitled to qualified immunity under the statute.

■ The reporting immunity statute contains two basic requirements. First, the report must be made pursuant to W.S. 14-3-205, which requires that a person immediately report abuse if they "kno[w] or ha[ve] reasonable cause to believe or suspect" that abuse has or is occurring, and second, that the reporter be acting in good faith. W.S. 14-3-209 (1986); *see also Allen v. Ortez*, 802 P.2d 1307, 1310 (Utah 1990). Under Wyoming's statute, good faith is presumed. W.S. 14-3-209.

■ We agree with the district court that appellees' actions met the requirements for statutory reporting immunity. Van Horn "reported" the abuse for purposes of the statute when she telephoned Detective Owen of the Cheyenne Police Department. Van Horn also requested and Detective Owen did observe two sessions with MJ at Van Horn's office. Detective Owen then made a report and referred the matter to Campbell County DPASS. The statute provides a presumption that the report was made in good faith absent any contrary allegation or showing from appellants. W.S. 14-3-209. There is no claim of a malicious motive on Van Horn's part. Instead it appears that Van Horn acted in good faith on the basis of what the child had told her. Van Horn, therefore, is protected by qualified immunity to the extent the complaint alleges actions based on or stemming from the act of reporting.

Appellants argue that Van Horn is liable because she was negligent in reporting abuse and thereafter did not report in good faith. We hold that W.S. 14-3-209 provides immunity, though negligence may be involved in reporting, for the report may still be made in good faith. The material facts found in affidavits and evidence presented when considered in a light most favorable to appellants establish at most negligence which is insufficient to overcome the statutory presumption and evidence of good faith. There is no evidence of bad faith to defeat the immunity provided her. This construction of the statute does not afford immunity for deliberately false accusations, yet still protects those who report in good faith. Were we to construe the statute in a different fashion, the result might be to chill legitimate reports of child abuse.

The district court's rationale is persuasive here:

In this case, the trial court ruled against the mother and found that there was not sufficient evidence of child abuse. The trial court did that twice, two different judges.

That doesn't mean that just because a judge disagrees with you that you're to run back into your hole and not try again. And certainly I would think that if I were not to grant summary judgment in this case, a substantial number of child abuse cases would simply go by the wayside. I don't believe that Fleming Associates would ever touch a child abuse case again.

*Accord, City of Laramie v. Hysong,* 808 P.2d at 204 and n. 3, and *Leonard v. Converse County Sch. Dist. No. 2,* 788 P.2d 1119, 1124 (Wyo.1990) (Golden, J., concurring in part, dissenting in part).

Other states have adopted this same policy argument in construing their statutes to provide immunity for those who report child abuse. *Lux by Lux v. Hansen,* 886 F.2d 1064, 1067–68 (8th Cir.1989); *Brown v. Pound,* 585 So.2d 885 (Ala.1991); *Maples v. Siddiqui,* 450 N.W.2d 529 (Iowa 1990); *Gross v. Myers,* 229 Mont. 509, 748 P.2d 459, 73 A.L.R.4th 771 (1987); *Harris v. City of Montgomery,* 435 So.2d 1207 (Ala. 1983); *Dunning v. Pacerelli,* 63 Wash. App. 232, 818 P.2d 34 (1991); *Gross v. Haight,* 496 So.2d 1225 (La.App.1986); *Davis v. Durham City Schools,* 91 N.C.App. 520, 372 S.E.2d 318 (1988). Because the statute provides qualified immunity rather than absolute immunity, sufficient flexibility is afforded to protect against reporting outside the statute or in bad faith. *See e.g., Allen v. Ortez,* 802 P.2d 1307 (Utah 1990) (social worker went beyond the reporting statute and sent letter to the city mayor); *Montoya by Montoya v. Bebensee,* 761 P.2d 285, 289 (Colo. App.1988) (if action not taken in good faith, the immunity is removed—counselor advising the mother to terminate father's visitation); *F.A. by P.A. v. W.J.F.,* 248 N.J.Super. 484, 591 A.2d 691 (1991) (neighbors made a report of abuse about one year after child's leg had been broken).

A California appellate court summarized the difficult situation we face:

> [W]e are obligated to honor the determination of the Legislature that protection of one innocent segment of society warrants occasional injury to another. The mute and powerless victims of child abuse have long suffered at the hands of their tormenters. Society's protective voice, the Legislature has found, has been silenced by the fear of retaliation. The protection of the young victims, the Legislature has determined, requires that uncompensated injury occasionally result to an adult.

*Thomas,* 274 Cal.Rptr. at 138. The legislature has provided qualified immunity for those who report child abuse in the manner specified in W.S. 14–3–205. Van Horn's report was within the purview and in accord with the statute.

Appellees are protected by statutory qualified immunity for reporting child abuse in good faith.

## WITNESS IMMUNITY

Appellants also allege causes of action claiming Van Horn was negligent in signing her affidavit and testifying in court proceedings. Appellees argue that actions taken prior to and in the course of legal proceedings are immune under the common law doctrine of witness immunity.

Since we have not considered the scope of common law witness immunity, we look to United States Supreme Court precedent. Traditionally, witnesses and those who participate in judicial proceedings enjoy absolute immunity for civil claims which could result from their statements made in open court. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." *Briscoe,* 460 U.S. at 330–31, 103 S.Ct. at 1113 (citations omitted). The United States Supreme Court summarized the two main reasons for affording witnesses civil immunity for their testimony:

> A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.

*Briscoe,* 460 U.S. at 333, 103 S.Ct. at 1114 (citations omitted).

■ Van Horn testified in court as to her suspicions of child sexual abuse. Under *Briscoe,* Van Horn is entitled to absolute immunity for her testimony in court. *Briscoe,* 460 U.S. at 330–33, 103 S.Ct. at 1113–14. The district court was correct in dis-

missing those causes of action that rely upon Van Horn's testimony in court.

■ Appellees argue that we should extend the traditional witness immunity to actions taken in anticipation of litigation, such as the affidavit signed by Van Horn. Appellees cite *Collins v. Walden,* 613 F.Supp. 1306 (N.D.Ga.1985), *judgment aff'd,* 784 F.2d 402 (11th Cir.1986).

*Collins* involved a motion for reconsideration of the custody award in a divorce proceeding. 613 F.Supp. at 1308. A motion to recuse Judge Miller from considering the motion was made on the grounds that the judge was biased because of improper ex parte communications and was physically and mentally incompetent to continue in the case since he had terminal cancer. *Collins,* 613 F.Supp. at 1308–09. In response to the motion to recuse, an attorney obtained, from persons who knew Judge Miller, affidavits which stated that Judge Miller was still mentally alert and able to rule in the case. *Collins,* 613 F.Supp. at 1309. In part because of the affidavits, the motion to recuse was denied; and Judge Miller ruled on the underlying matter and then died ten days later. *Collins,* 613 F.Supp. at 1310. Collins filed suit, alleging that the defendants had conspired to deprive him of his civil rights by denying him a fair hearing on the motion to recuse Judge Miller. *Collins,* 613 F.Supp. at 1311.

The court recognized the common law absolute immunity that protects participants in judicial proceedings. *Collins,* 613 F.Supp. at 1314 (*citing Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108. The court then decided that the rationale in *Briscoe* for affording immunity is equally applicable to other forms of testimony such as depositions and affidavits. *Collins,* 613 F.Supp. at 1314. The court reasoned:

> The threat of a suit for damages can have the same chilling effect on a witness who testified by affidavit or deposition as one who testifies in court. Yet, testimony by affidavit or deposition is an important part of the judicial process, especially before and after the actual trial, and should enjoy the same protec-

tion as in court testimony. * * * The immunity applies even though the testimony might have been knowingly false and malicious.

*Collins,* 613 F.Supp. at 1314. The court also pointed out the importance of affidavits for gathering of information which is crucial to the judicial process:

> This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill. The search for evidence often requires interviews with persons who may not actually testify at trial but who are nonetheless important to the process because they might know of someone else whose testimony would be more helpful. The possibility that they may be forced to defend a lawsuit for damages can only discourage such people from becoming involved. The court's need for evidence demands that all participants in the process of gathering evidence for use at trial be immune from any liability for damages[.]

*Collins,* 613 F.Supp. at 1315. The court also acknowledged that if a witness gave knowingly false and malicious testimony, the witness could be found guilty of perjury and face criminal penalties. *Id.* at n. 9. Thus, a witness is subject to criminal penalties and not entirely free to testify falsely, but the witness still will not be subject to a civil action for damages. *Id.* The court concluded that the defendants had immunity for matters stated in affidavits to the court. *Id.* at 1315–16.

That rationale is persuasive here. There are other remedies for false affidavits apart from civil liability. And imposing civil liability poses the very real risk that witnesses may not participate in pretrial preparations and thus the crucial things that occur before trial—preparation, settlements, dismissals—might be thwarted altogether. Other courts have reached this conclusion in similar circumstances. *See Kahn v. Burman,* 673 F.Supp. 210 (E.D.Mich.1987) *judgment aff'd* 878 F.2d

1436 (6th Cir.1989) (physician's report and deposition concluding there had been medical malpractice was immune); *Dolan v. Von Zweck*, 19 Mass.App. 1032, 477 N.E.2d 200 (1985) (psychiatrist's letter about child custody made in institution of litigation was covered by immunity); *Adams v. Peck*, 43 Md.App. 168, 403 A.2d 840 (1979) *judgment aff'd* 288 Md. 1, 415 A.2d 292 (1980) (psychiatrist's report containing a conclusion that abuse was occurring had immunity). Therefore, we find that Van Horn possessed absolute immunity for her activities in preparation for litigation, including signing of the affidavit.

Finding that witness immunity covered Van Horn's actions not only supports the traditional policy reasons we have discussed but it also is consistent with the Wyoming Child Protection Act. The Child Protection Act anticipates that it will be necessary for those who report to testify in court. *See* W.S. 14–3–210. Granting immunity to reporters who testify in court furthers the purposes of the Protection Act as well.

Appellants argue that Van Horn should not be shielded from liability for negligent actions she took which were independent of signing the affidavit or testifying. They cite *Babcock v. State*, 116 Wash.2d 596, 809 P.2d 143 (1991). In *Babcock*, the caseworkers did not fulfill the statutory requirements and did not conduct an adequate investigation before placing the children in foster care with a convicted rapist who then raped the children. They were denied immunity. 809 P.2d 143, 149. The approach is consistent with the approach we take here. Actions taken to report suspicions of child abuse are covered by qualified immunity so long as the reporter complies with requirements of the statute.

Appellants also cite *Ribas v. Clark*, 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637 (1985), and argue that the judicial privilege will not cover all actions taken in furtherance of litigation. We agree. However, *Ribas* is easily distinguished as not claiming immunity for a pretrial preparation affidavit and actual testimony but instead for eavesdropping. The court, nevertheless, in

*Ribas*, held that the privilege barred actual damages but remanded for assessment of damages stemming from violation of a California Privacy Act for the eavesdropping. *Ribas*, 212 Cal.Rptr. at 150, 696 P.2d at 644.

Appellants also cite *James v. Brown*, 637 S.W.2d 914 (Tex.1982) and argue that immunity for reporting should not extend to underlying malpractice or negligence that was independent of the reporting. We need not reach that question since the amended complaint contains allegations based on the affidavit and the testimony and not the actual therapy rendered to MJ.

The district court was correct in finding that Van Horn had immunity from civil damages for signing the affidavit and testifying.

### OTHER CAUSES OF ACTION

We have left only the question of whether the district court was correct in dismissing appellants' claim for intentional infliction of emotional distress. Because the conduct that serves as the basis for the intentional infliction claim is the very same conduct for which there is immunity as a matter of law and there is no evidence of bad faith in the record, we find that this claim was correctly dismissed.

The language in the complaint demonstrates how the conduct which we have found to be immune is the conduct alleged as the basis for the intentional infliction claim:

### COUNT III

53. Defendant, Gailene Van Horn, intentionally and knowingly signed her *affidavit* of July 18, 1988. * * *

56. By signing the *affidavit* of July 18, 1988, defendant, Gailene Van Horn, acted intentionally and knowingly.

57. * * * The other professionals and agencies continued to collect information, investigate, perform psychological assessments on both parents and the minor child * * *, all of which were available to Gailene Van Horn prior to her *testimony* at the trial on February 22, 1989. Gail-

ene Van Horn's actions were extreme and constitute outrageous conduct and thereby intentionally or recklessly inflicted severe emotional distress on the plaintiff[.] [emphasis added]

It is clear from the language contained in the complaint that the cause of action for intentional infliction is based solely on Van Horn's affidavit and testimony which we have found covered by immunity.

Having found that common law witness and statutory immunity bar this action, we need not review appellants' other claims of error. The district court was correct in dismissing all claims.

Affirmed.