2009 WY 100

**Letitia C. ABROMATS, Philip E. Abromats, Appellants (Plaintiffs)**

v.

**Don WOOD, Brenda Wood, Appellees (Defendants).**

**Don Wood, Brenda Wood, Appellants (Defendants),**

v.

**Letitia C. Abromats, Philip E. Abromats, Appellees (Plaintiffs).**

Nos. S–08–0195, S–09–0196.

Supreme Court of Wyoming.

Aug. 19, 2009.

VOIGT, Chief Justice.

[¶ 1]   Philip and Letitia Abromats request relief from summary judgment granted to Don and Brenda Wood, claiming that the district court erred when it found that one allegedly defamatory statement contained in a victim impact statement was not libel per se and that the other allegedly defamatory statement was protected by qualified immunity as a statement concerning a common interest.   The Woods, in their cross appeal, request that this Court uphold the dismissal of the Abromats' claims but ask that we find that neither of the statements constituted libel per se as a matter of law and that the Woods were entitled to protection under the doctrine of absolute immunity for witnesses in a legal proceeding.   We affirm the district court's grant of summary judgment.

## ISSUE[1]

[¶ 2]   Did the district court err when it found that statements by a victim published to a victims' services organization for the purpose of use in a criminal proceeding were protected by qualified immunity as statements made pursuant to a common interest but not absolutely immune from an action for libel as statements made by a witness pursuant to a legal proceeding?

## FACTS

[¶ 3]   On March 2, 2006, Letitia Abromats was involved in a traffic accident in which she struck the Woods' car from behind.   The Woods' son was driving the vehicle at the time.   As a result of the accident, Mrs. Abromats was charged with following too closely, driving under suspension, and driving without insurance.   Mrs. Abromats was scheduled to be arraigned on March 22, 2006.   The arraignment was rescheduled for April 5, 2006, and postponed again to May 3, 2006, in part to give Mr. Abromats time to acquire his license to practice law in Wyoming so that he could represent his wife.   In the interim, Mrs. Abromats received two more citations for driving with a suspended license.

Representing Appellants in S–08–0195 and Appellees in S–08–0196:  Philip E. Abromats of Philip E. Abromats, P.C., Greybull, Wyoming.

Representing Appellees in S–08–0195 and Appellants in S–08–0196:  Bradley T. Cave of Holland & Hart LLP, Cheyenne, Wyoming, and Hadassah M. Reimer of Holland & Hart LLP, Jackson, Wyoming.   Argument by Ms. Reimer.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

---

1.   The parties also raised the issue of whether the statements constituted libel per se.   Because we find that the statements are protected by absolute immunity, which protects the utterer from liability even if the statement in question is libelous, we do not address the nature of the statements.

Because she was charged with three separate driving under suspension offenses, Mrs. Abromats was faced with the possibility of mandatory jail time under Wyo. Stat. Ann. § 31-7-134(c) (LexisNexis 2009). Mrs. Abromats was arrested for driving while under the influence on May 27, 2007. Plea negotiations were protracted and there were a number of delays in the proceedings as the Abromats and the prosecutor attempted to resolve all the charges. The case was not ultimately resolved until the court accepted a plea agreement and sentenced Mrs. Abromats on January 11, 2007.

[¶ 4] The Woods, as victims, were kept informed of the status of the criminal case by Crisis and Referral Emergency Services (C.A.R.E.S.), a victims' services organization. The Woods and the Abromats did not have contact after the accident until the Woods received a letter from Mr. Abromats, dated August 31, 2006, stating that the Abromats wished to settle any damage claims. In response to that letter, Mr. Wood called the Abromats but the discussion was not productive and did not lead to settlement. In that phone call, Mr. Wood expressed his inclination to leave the matter to the criminal justice system and to seek restitution as a victim, rather than to file a civil suit. Mr. Abromats then wrote to Mr. Wood inquiring as to what amount the Woods were going to claim for "restitution" and indicating that he required a release of liability as a condition of payment. The Woods were advised not to release liability in case their son, who was injured in the crash, wished to recover for future treatment of his injuries upon reaching the age of majority. Because they had decided to wait to see what restitution was ordered in the criminal case before pursuing any civil remedies, the Woods did not respond to Mr. Abromats' letter but submitted a claim for restitution to the court through C.A.R.E.S.

[¶ 5] The plea negotiations on the criminal case then took a bizarre turn. Mr. Abromats, as counsel for his wife, attempted to condition payment of restitution as part of the criminal plea agreement on a release of civil liability from the victims, the Woods. Unfathomably, the prosecutor agreed to the condition. The original plea agreement signed by the Abromats and the prosecuting attorney contained language that conditioned the payment of restitution to the Woods, as victims, on a release of civil liability for the Abromats. A C.A.R.E.S. representative contacted the Woods and informed them that the Abromats were taking actions in the criminal proceedings to impede the Woods' rights in future civil proceedings. The Woods then submitted a victim impact statement to the prosecutor through C.A.R.E.S., clarifying that they had not agreed to release Mrs. Abromats from civil liability.

[¶ 6] Based on the victim impact statement, the Abromats sued the Woods for libel, slander, and intentional infliction of emotional distress. The Abromats eventually voluntarily dismissed the claims of slander and intentional infliction of emotional distress. The remaining claim alleged that two statements in the victim impact statement were libelous. The statements at issue were that the Woods' car was "hit at full speed" and

> [t]here is a problem when the other driver and her husband can what seems to have so much power over our court system and what seems to be able to manipulate all the circumstances, when what took place is so evident and the answer seems so simple. We wonder what is going on?

[¶ 7] The Abromats' Complaint alleged publication of those statements to the county attorney and her staff, to the clerk of circuit court and her staff, to the judges involved and their staff, and to personnel at C.A.R.E.S. The Woods brought a motion to dismiss under Rule 12(b)(6) and the district court dismissed the claims involving publication to the county attorney and her staff, to the clerk of circuit court and her staff, and to the judges involved and their staff. The district court found that the doctrine of absolute immunity for statements made by a witness in the course of legal proceedings protected any publication to members of the legal system. The court could not, however, resolve the issue as to the publication of the statements to personnel at C.A.R.E.S. The Woods brought a subsequent motion for summary judgment on the remaining claim of publication of the allegedly libelous state-

ments to C.A.R.E.S. The court granted summary judgment. With respect to the first statement, the court found that the Abromats had not claimed special damages and that, therefore, the statement was not actionable because it did not constitute libel per se. The court found that the second statement was protected under the doctrine of qualified immunity for statements made in common interest, and that the Abromats had failed to show malice on the part of the Woods, as required for such statements to be actionable. This appeal followed.

## STANDARD OF REVIEW[2]

■■■ [¶ 8] We review a grant of summary judgment using the same materials reviewed by the district court, and following the same legal standards. *Hoblyn v. Johnson*, 2002 WY 152, ¶ 11, 55 P.3d 1219, 1224 (Wyo.2002). "If we can uphold summary judgment on the record presented under any proper legal theory, we will." *Id.*

## DISCUSSION

*Did the district court err when it found that statements by a victim published to a victims' services organization for the purpose of use in a criminal proceeding were protected by qualified immunity as statements made pursuant to a common interest but not absolutely immune from an action for libel as statements made by a witness pursuant to a legal proceeding?*

■■■ [¶ 9] Libel is a defamatory statement communicated in writing.

A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held. To be actionable, the defamatory or disparaging words must affect the plaintiff in some way that

is peculiarly harmful to one engaged in his trade or profession.

*Lever v. Community First Bancshares, Inc.*, 989 P.2d 634, 637–38 (Wyo.1999) (citations and quotation marks omitted). The question of whether a statement is protected by privilege or immunity and therefore cannot be grounds for a civil defamation suit is one of law, which we review *de novo*. *Id.* at 638.

The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. Some American decisions required a showing that the witness' allegedly defamatory statements were relevant to the judicial proceeding, but once this threshold showing had been made, the witness had an absolute privilege. The plaintiff could not recover even if the witness knew the statements were false and made them with malice.

In the words of one 19th-century court, in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.

*Briscoe v. LaHue*, 460 U.S. 325, 331–33, 103 S.Ct. 1108, 1113–14, 75 L.Ed.2d 96 (1983) (citations omitted). "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977).

---

**2.** Some of the issues were raised in the context of the grant of summary judgment, while others were raised as part of the earlier grant of the motion to dismiss for failure to state a claim. However, since we can affirm a summary judgment on any grounds appearing in the record,

there is no need to apply the Rule 12(b)(6) motion to dismiss standard separately, as any claim that would not survive a motion to dismiss would necessarily fail to survive a motion for summary judgment as well.

[¶ 10] The district court determined that the publication of the Woods' victim impact statement to members of the judiciary and their staff and with respect to the prosecutor's office was absolutely privileged under the concept of witness immunity. The court concluded that the same immunity did not extend to the publication of that statement to C.A.R.E.S. because a victims' services organization is neither an attorney acting in furtherance of a court proceeding nor a direct part of the judicial branch. The district court granted summary judgment instead on the theory that the statements were conditionally privileged under the doctrine of immunity for statements bearing on a common interest. While we agree with that line of reasoning, we find that absolute immunity for witness statements does extend to this situation and we will dispose of the issue on that basis.

[¶ 11] In *Elmore v. Van Horn,* 844 P.2d 1078 (Wyo.1992), we found that witness immunity extends to the preparation of affidavits by potential witnesses. We adopted the reasoning of a federal court that said,

> This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill. The search for evidence often requires interviews with persons who may not actually testify at trial but who are nonetheless important to the process because they might know of someone else whose testimony would be more helpful. The possibility that they may be forced to defend a lawsuit for damages can only discourage such people from becoming involved. The court's need for evidence demands that all participants in the process of gathering evidence for use at trial be immune from any liability for damages[.]

*Id.* at 1085 (quoting *Collins v. Walden,* 613 F.Supp. 1306 (N.D.Ga.1985), *judgment aff'd,* 784 F.2d 402 (11th Cir.1986)). We reasoned that sworn statements of any kind are subject to penalties for perjury and that there are other remedies available for a person wronged by a witness acting in bad faith. *Id.* However, we have not limited the concept of immunity to sworn statements. In *Elmore,* for example, we cited one case involving a doctor's report and another involving a letter from a psychiatrist, noting that statements contained therein had been found to be protected under the witness immunity doctrine. *Id.* at 1085–86.

[¶ 12] In this case, as the Abromats point out, the statement was not a sworn statement nor was it made in open court. They also make much of the fact that victims of misdemeanors do not have a statutorily mandated right to file a victim impact statement in cases where the court does not order a presentence investigation. *See* Wyo. Stat. Ann. § 1–40–203(b)(xiv) through (xvii) (LexisNexis 2009). However, nothing in Wyoming law precludes a court from seeking or considering such a statement from a victim of a misdemeanor and we unequivocally refuse to adopt a policy that would discourage a victim from providing such a statement. "We have consistently stated that a trial court has broad discretion to consider a wide range of information about the defendant and his crimes in imposing sentence." *Capellen v. State,* 2007 WY 107, ¶ 16, 161 P.3d 1076, 1080 (Wyo.2007). The victim of a crime is an integral part of many criminal investigations and we can think of few participants in the judicial process more in need of protection. In addition, a court is required to seek information about restitution to victims under Wyoming law and the court and the prosecutor are required to communicate with the victim about that and other matters. Wyo. Stat. Ann. §§ 7–9–102 through 7–9–107 (LexisNexis 2009); Wyo. Stat. Ann. § 1–40–204 (LexisNexis 2009). It is vital that victims feel free to speak openly during that process.

[¶ 13] The Abromats argue that the Woods are not immune to a civil suit based on their publication of the victim impact statement to C.A.R.E.S., which is neither a court nor a prosecutor. However, Wyoming law does create a statutorily defined role for "crime victim service providers" such as

C.A.R.E.S. Wyo. Stat. Ann. § 1–40–118(b) (LexisNexis 2009).[3] Such service providers are an important conduit for information between the State and the victim. Moreover, Wyoming has a strong public policy of protecting victims of crimes from harassment. Wyo. Stat. Ann. § 1–40–205(a) (LexisNexis 2009) ("A victim or witness has the right to be free from any form of harassment, intimidation or retribution"). We therefore hold that the Woods' publication of statements to C.A.R.E.S. for submission to the court in an underlying criminal case cannot be used to support a civil suit for libel. Where, as here, the document containing the victims' statements was prepared for the purpose of submission to the court, and it was not published to anyone for any reason outside that purpose, we hold that the statements contained therein are absolutely privileged as state-

ments by a witness in the context of a judicial proceeding.

## CONCLUSION

[¶ 14]   Statements made by the victim of a crime to a crime victim service provider for submission to the court, which were not published to anyone else for any other purpose, cannot support tort liability for libel because a victim has absolute immunity as a witness when making statements in the course of the judicial proceedings. The district court judgment is affirmed.

3.   Wyo. Stat. Ann. § 1–40–118(b) reads:
(b) For purposes of this section "crime victim service provider" means any program operated by a public agency or nonprofit organization or any combination thereof which provides comprehensive services to victims of crime, including but not limited to:
(i) Crisis intervention services;
(ii) Informing victims and witnesses of the case status and progress;
(iii) Assistance in participating in criminal justice proceedings;

(iv) Performing advocate duties for crime victims;
(v) Assisting victims in recovering property damaged or stolen and in obtaining restitution or compensation for medical and other expenses incurred as a result of crime;
(vi) Developing community resources to assist victims of crime;
(vii) Assisting victims of crime in the preparation and presentation of claims under the Crime Victims Compensation Act.